**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LESLIE'S, INC., *et al.*,[1] | ) | Case No. 26-90795 (ARP) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. [__]** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) CRITICAL VENDORS, (B) LIEN CLAIMANTS, (C) FOREIGN VENDORS, AND (D) 503(B)(9) CLAIMANTS; (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition claims held by (i) Critical Vendors, (ii) Lien Claimants, (iii) Foreign Vendors, and (iv) 503(b)(9) Claimants (collectively, the "Trade Claimants"); (b) confirming the administrative expense priority status of all undisputed obligations on account of Outstanding Orders; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/lesliespool/. The location of Debtor Leslie's, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 2005 East Indian School Road, Phoenix, AZ 85016.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The final hearing on the Motion shall be on ________, 2026, at __:__ _.m., prevailing Central Time. Any objections or responses to entry of a final order on the motion shall be filed on or before 4:00 p.m., prevailing Central Time, on ________, 2026. If no objections to entry of the Final Order on the Motion are timely received, the Court may enter such Final Order without need for the final hearing.

2. The Debtors are authorized, but not directed, in the ordinary course of business and consistent with their past practices, to pay the prepetition Trade Claims (or a portion thereof) comprising Critical Vendor Claims, Lien Claims, Foreign Vendor Claims, and 503(b)(9) Claims on an interim basis and in the amounts detailed in the Motion, as they come due in the ordinary course of business, without further order of this Court. Nothing herein shall prejudice the Debtors' right to seek a further order from this Court authorizing the Debtors to exceed the aggregate amounts of any category as set forth herein during the Interim Period.

3. The Debtors are authorized to pay all undisputed amounts related to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

4. As a condition to receiving payment pursuant to this Interim Order on account of a Trade Claim, any Trade Claimant that accepts payment pursuant to the authority granted in this Interim Order shall agree to: (a) continue or recommence supplying goods and services to the Debtors on customary trade terms that are at least as favorable to the Debtors as those in place during the twelve months prior to the Petition Date, or as otherwise may be agreed to by the Debtors, and (b) not cancel any contract, agreement, or arrangement pursuant to which they provide such goods and/or services to the Debtors during the course of these chapter 11 cases. The Debtors reserve the right to require, in their sole discretion (a) that the Customary Trade Terms be commemorated in writing, including by email or through a Trade Agreement and/or (b) additional favorable trade terms with any Trade Claimant, in each case as a condition to payment of any Trade Claim.

5. Any party that accepts payment from the Debtors on account of a Trade Claim shall be deemed to have (a) agreed to the terms and provisions of this Interim Order, (b) waived, to the extent so paid, claims of any type, kind, or priority (including reclamation claims), against the Debtors and their respective assets and properties, and (c) voluntarily submitted themselves to the jurisdiction of this Court. The Debtors may, in their reasonable business judgment, (a) negotiate, amend, or modify the form of Trade Agreement and (b) decline to condition payment of Trade Claims upon the execution of a Trade Agreement.

6. The form of Trade Agreement, substantially in the form attached hereto as Exhibit A, is approved in its entirety. The Debtors are authorized to enter into any such Trade Agreements on an interim basis.

7. Regardless of whether a Trade Agreement has been executed or if the parties have agreed in writing that Customary Trade Terms are a condition to payment, if any party accepts

payment hereunder and does not continue supplying goods or services to the Debtors in accordance with terms at least as favorable to the Debtors as the Customary Trade Terms then, subject to the entry of a final order on the Motion from this Court: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to pay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding from the Debtors to such supplier or vendor without the right of any setoffs, claims, provisions for payment of any claims, or otherwise. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order, the Debtors shall provide such payment recipient with a copy of this Interim Order (unless previously provided).

8. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order to a Trade Claimant on account of an Outstanding Order, the Debtors shall provide a copy of this Interim Order to the applicable party (unless previously provided to such Trade Claimant).

9. Nothing in the Motion or this Interim Order, nor the Debtors' implementation of the relief granted in this Interim Order, shall be deemed to modify or waive any of the Debtors' rights with respect to goods and services requested or received from the Critical Vendors, including the Debtors' rights to: (a) cancel a purchase order; (b) decline the acceptance of goods and/or

services; (c) return any defective, nonconforming, or unacceptable goods; or (d) contest the amount of any invoice or claim on any grounds.

10. The Debtors shall maintain a matrix summarizing amounts paid, subject to the terms and conditions of this Interim Order, including the following information: (a) the names of payee; (b) the amount of payment; (c) the category or type of payment as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date (the "Critical Vendor Matrix"). The Debtors shall provide a copy of the Critical Vendor Matrix to the U.S. Trustee, counsel to the Ad Hoc Group, and counsel to any statutory committee appointed in these chapter 11 cases on the last day of each calendar month, beginning upon the first full month following entry of this Interim Order; *provided* that such recipients shall keep the Critical Vendor Matrix strictly confidential and not disseminate it to other parties.

11. Notwithstanding anything to the contrary set forth herein, any payment made or to be made hereunder, and any authorization contained herein, shall be subject to the requirements imposed on the Debtors under any interim or final orders authorizing the Debtors' use of cash collateral and/or postpetition debtor-in-possession financing (any such order, a "DIP Order") and any approved budget in connection therewith. To the extent there is any inconsistency between the terms of any DIP Order (including any approved budget in connection therewith) and any approval or action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

12. Notwithstanding anything to the contrary herein, nothing contained in the Motion or any actions taken pursuant to this Order is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority of, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law;

(b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

13. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized and directed to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

14. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

15. The relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and may therefore be granted immediately pursuant to Bankruptcy Rule 6003(a).

16. Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules.

17. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

19. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: ________________, 2026

______________________________________
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

## Trade Agreement

**THIS TRADE AGREEMENT IS NOT AN OFFER OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

# TRADE AGREEMENT

Leslie's, Inc. and its debtor subsidiaries (collectively, the "Debtors"), on the one hand, and the vendor identified in the signature block below (the "Vendor"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

## Recitals

WHEREAS, on September 30, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

WHEREAS, on [●], 2026, the Court entered the *Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors, (B) Lien Claimants, (C) Foreign Vendors, and (D) 503(b)(9) Claimants, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* [Docket No. [●]] (the "Critical Vendor Order") authorizing the Debtors, on an interim basis, under certain conditions, to pay the prepetition claims of certain suppliers, including the Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS, prior to the Petition Date, the Vendor delivered goods to the Debtors and/or performed services for the Debtors, and the Debtors paid the Vendor for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS, the Debtors and the Vendor (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Vendor may hold against the Debtors.

## Agreement

1. Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. Vendor Payment. The Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Debtors to the Vendor as of the Petition Date

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Order.

is $[●] (the "Agreed Vendor Claim"). Within 10 business days following execution of this Trade Agreement, the Debtors shall pay the Vendor $[●] on account of, and in full and final satisfaction of, its Agreed Vendor Claim (the "Vendor Payment") (without interest, penalties, or other charges). For the avoidance of doubt, any amounts that become due and owing by the Debtors to the Vendor for goods or services provided after the Petition Date shall continue to be due and owing and shall be paid in the ordinary course pursuant to the Parties' agreed-upon payment terms.

3. Agreement to Supply.

a. The Vendor shall supply goods to and/or perform services for the Debtors, and the Debtors shall accept and pay for goods and/or services, as applicable, from the Vendor (to the extent the Debtors seek such goods and/or services), for the duration of the Debtors' chapter 11 cases based on the following terms (collectively, the "Customary Trade Terms"): those trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing and price supports, cash discounts, the number of days for timing of payments and payment terms, allowances, as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable, product mix, availability, and other programs) in place in the twelve months prior to the Petition Date, or are otherwise acceptable to the Debtors in light of customary industry practices, except for any partial payments or other payments (or assurances) the Debtors made with respect to any unfinished product. "Duration of the Debtors' chapter 11 cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Debtors' chapter 11 cases; (ii) the closing of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, resulting in a cessation of the Debtors' business operations; or (iii) the liquidation of the Debtors or conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

b. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Debtors except as agreed to in a signed writing by the Parties (email being sufficient).

c. The Vendor shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

d. The Vendor shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Debtors in the ordinary course of business pursuant to the Customary Trade Terms.

e. The Vendor shall not be permitted to terminate or cancel any contract, agreement, or arrangement pursuant to which they provide services to the Debtors for the duration of the Debtors' chapter 11 cases.

f. In the event this Trade Agreement is terminated, such termination will not affect the obligation of the Vendor to make delivery on orders consistent with the Debtors' prior orders and sales accepted by the Vendor prior to the effective date of termination, subject to the provisions contained herein. If this Trade Agreement terminates, the Debtors may require the Vendor to repurchase all unsold goods in the Debtors' inventory, at the Debtors' laid-in cost, with shipping to the Vendor's plant to be paid by the Vendor. The Vendor will pay the Debtors for repurchased inventory seven (7) business days after receipt. Alternatively, the Vendor may designate a party to purchase the Debtors' merchantable inventory of goods at the Debtors' laid-in cost.

4. Other Matters.

a. The Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Debtors' chapter 11 cases on account of any outstanding administrative claims the Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. The Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b. The Vendor will not separately seek payment from the Debtors on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a chapter 11 plan confirmed in the Debtors' chapter 11 cases.

c. The Vendor will not file or otherwise assert against the Debtors, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from prepetition agreements or transactions. Furthermore, if the Vendor has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Vendor will promptly take all necessary actions to remove such liens and hereby authorizes the Debtors to take any such actions on its behalf.

5. Breach.

a. In the event that the Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a "Vendor Breach"), upon written notice to the Vendor (email being sufficient), the Vendor shall promptly pay to the Debtors immediately available funds in an amount equal to, at the election of the Debtors, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Debtors from the postpetition receivables then owing to the Vendor from the Debtors.

b. In the event that the Debtors recover the Vendor Payment pursuant to Section 5(a) hereof or otherwise, the Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

c. The Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Debtors. Accordingly, the Vendor agrees that, in the event of a Vendor Breach, the Debtors shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions by ordinary motion to the Court (without, for the avoidance of doubt, any requirement that the Debtors commence an adversary proceeding pursuant to Bankruptcy Rule 7003), to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder, not only by an action or actions for damages, but also by an action or actions for specific performance, injunctive relief, and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, in the event of a Vendor Breach, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. The Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for specific performance, injunctive relief, or other equitable remedies.

6. Notice.

If to the Vendor, then to the person and address identified in the signature block hereto.

If to the Debtors:

Leslie's, Inc.
2005 East Indian School Road
Phoenix, AZ 85016
Attn: Benjamin Lindquist
Email: blindquist@lesl.com

with a copy to:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York, 10017
Attn: Stephanie Marshak, Zachary Weiner, Michael Koch
Email: stephanie.marshak@stblaw.com
zachary.weiner@stblaw.com
michael.koch@stblaw.com

7. Representations and Acknowledgements. The Parties agree, acknowledge, and represent that:

a. the Parties have reviewed the terms and provisions of the Critical Vendor Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendor Order;

b. any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Critical Vendor Order;

c. if the Vendor refuses to supply goods or services to the Debtors as provided herein or otherwise fails to perform any of its obligations hereunder, the Debtors may exercise all rights and remedies available under the Critical Vendor Order, the Bankruptcy Code, or applicable law; and

d. in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event no action may be taken by either Party, including, but not limited to, discontinuing shipment of goods or provision of services, as applicable, from the Vendor to the Debtors, until a ruling of the Court is obtained.

8. Confidentiality. In addition to any other obligations of confidentiality between the Vendor and Debtors, the Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Debtors pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); *provided* that if any party seeks to compel the Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Vendor intends to disclose any or all of the Confidential Information, the Vendor shall immediately provide the Debtors with prompt written notice so that the Debtors may seek an injunction, protective order, or any other available remedy to prevent such disclosure; *provided, further*, that if such remedy is not obtained, the Vendor shall furnish only such information as the Vendor is legally required to provide.

9. Miscellaneous.

a. The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b. This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties. Moreover, Vendor agrees to vote all claims now or hereafter beneficially owned by Vendor in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan proposed by the Debtors on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith as long as such chapter 11 plan provides for a treatment of any Agreed Vendor Claim that is materially consistent with this Trade Agreement.

c. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d. This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

e. The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement, *provided* that, the Debtors shall have the right to enforce this Trade Agreement, including by seeking an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement, in any jurisdiction.

f. This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature Page Follows*]

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

| **[DEBTOR ENTITY]** | **[VENDOR]** |
| --- | --- |
| ______________________________ | ______________________________ |
| By: [●]<br>Title: [●] | By: [●]<br>Title: [●]<br>Address: [●] |
| Date: [●] | Date: [●] |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LESLIE'S, INC., *et al.*,[1] | ) | Case No. 26-90795 (ARP) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. [__]** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) CRITICAL VENDORS, (B) LIEN CLAIMANTS, (C) FOREIGN VENDORS, AND (D) 503(B)(9) CLAIMANTS; (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Final Order") (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business certain prepetition claims held by (i) Critical Vendors, (ii) Lien Claimants, (iii) Foreign Vendors, and (iv) 503(b)(9) Claimants, (b) confirming the administrative expense priority status of all undisputed obligations on account of Outstanding Orders, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/lesliespool/. The location of Debtor Leslie's, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 2005 East Indian School Road, Phoenix, AZ 85016.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Debtors are authorized, but not directed, in the ordinary course of business and consistent with their past practices, to pay the prepetition Trade Claims (or a portion thereof) comprising Critical Vendor Claims, Lien Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the amounts detailed in the Motion, as they come due in the ordinary course of business, without further order of this Court.

2. The Debtors are authorized, but not directed, to pay all undisputed amounts related to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

3. As a condition to receiving payment pursuant to this Final Order on account of a Trade Claim, any Trade Claimant that accepts payment pursuant to the authority granted in this Final Order shall agree to: (a) continue or recommence supplying goods and services to the Debtors on customary trade terms that are at least as favorable to the Debtors as those in place during the twelve months prior to the Petition Date, or as otherwise may be agreed to by the Debtors, and (b) not cancel any contract, agreement, or arrangement pursuant to which they

provide such goods and/or services to the Debtors during the course of these chapter 11 cases. The Debtors reserve the right to require, in their sole discretion (a) that the Customary Trade Terms be commemorated in writing, including by email or through a Trade Agreement and/or (b) additional favorable trade terms with any Trade Claimant, in each case as a condition to payment of any Trade Claim.

4. Any party that accepts payment from the Debtors on account of a Trade Claim shall be deemed to have (a) agreed to the terms and provisions of this Order, (b) waived, to the extent so paid, claims of any type, kind, or priority (including reclamation claims), against the Debtors and their respective assets and properties, and (c) voluntarily submitted themselves to the jurisdiction of this Court. The Debtors may, in their reasonable business judgment, (a) negotiate, amend, or modify the form of Trade Agreement and (b) decline to condition payment of Trade Claims upon the execution of a Trade Agreement.

5. The form of Trade Agreement, substantially in the form attached hereto as Exhibit A, is approved in its entirety. The Debtors are authorized to enter into any such Trade Agreements on a final basis.

6. Regardless of whether a Trade Agreement has been executed or if the parties have agreed in writing that Customary Trade Terms are a condition to payment, if any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with terms at least as favorable to the Debtors as the Customary Trade Terms then, subject to this Final Order: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been

made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to pay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding from the Debtors to such supplier or vendor without the right of any setoffs, claims, provisions for payment of any claims, or otherwise. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Final Order, the Debtors shall provide such payment recipient with a copy of this Final Order (unless it or the Interim Order was previously provided).

7. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Final Order to a Trade Claimant on account of an Outstanding Order, the Debtors shall provide a copy of this Final Order to the applicable party (unless it or the Interim Order was previously provided to such Trade Claimant).

8. Nothing in the Motion or this Final Order, nor the Debtors' implementation of the relief granted in this Final Order, shall be deemed to modify or waive any of the Debtors' rights with respect to goods and services requested or received from the Critical Vendors, including the Debtors' rights to: (a) cancel a purchase order; (b) decline the acceptance of goods and/or services; (c) return any defective, nonconforming, or unacceptable goods; or (d) contest the amount of any invoice or claim on any grounds.

9. All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code; *provided* that nothing in this Final Order shall determine the prepetition or postpetition status of goods in transit as of the Petition Date.

10. The Debtors shall maintain a matrix summarizing amounts paid, subject to the terms and conditions of this Order, including the following information: (a) the names of payee; (b) the amount of payment; (c) the category or type of payment as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date (the "Critical Vendor Matrix"). The Debtors shall provide a copy of the Critical Vendor Matrix to the U.S. Trustee, counsel to the Ad Hoc Group, and counsel to any statutory committee appointed in these chapter 11 cases on the last day of each calendar month, beginning upon the first full month following entry of the Interim Order; *provided* that such recipients shall keep the Critical Vendor Matrix strictly confidential and not disseminate it to other parties.

11. Notwithstanding anything to the contrary set forth herein, any payment made or to be made hereunder, and any authorization contained herein, shall be subject to the requirements imposed on the Debtors under any interim or final orders authorizing the Debtors' use of cash collateral and/or postpetition debtor-in-possession financing (any such order, a "DIP Order") and any approved budget in connection therewith. To the extent there is any inconsistency between the terms of any DIP Order (including any approved budget in connection therewith) and any approval or action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

12. Notwithstanding anything to the contrary herein, nothing contained in the Motion or any actions taken pursuant to this Order is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority of, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission

that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

13. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized and directed to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

14. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

15. The relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and may therefore be granted immediately pursuant to Bankruptcy Rule 6003(a).

16. Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules.

17. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

19. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Houston, Texas
Dated: _______________, 2026

______________________________________
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit A**

## Trade Agreement

**THIS TRADE AGREEMENT IS NOT AN OFFER OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

# TRADE AGREEMENT

Leslie's, Inc. and its debtor subsidiaries (collectively, the "Debtors"), on the one hand, and the vendor identified in the signature block below (the "Vendor"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

## Recitals

WHEREAS, on September 30, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

WHEREAS, on [●], 2026, the Court entered the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors, (B) Lien Claimants, (C) Foreign Vendors, and (D) 503(b)(9) Claimants, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* [Docket No. [●]] (the "Critical Vendor Order") authorizing the Debtors, on a final basis, under certain conditions, to pay the prepetition claims of certain suppliers, including the Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS, prior to the Petition Date, the Vendor delivered goods to the Debtors and/or performed services for the Debtors, and the Debtors paid the Vendor for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS, the Debtors and the Vendor (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Vendor may hold against the Debtors.

## Agreement

1. Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. Vendor Payment. The Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Debtors to the Vendor as of the Petition Date

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Order.

is $[●] (the "Agreed Vendor Claim"). Within 10 business days following execution of this Trade Agreement, the Debtors shall pay the Vendor $[●] on account of, and in full and final satisfaction of, its Agreed Vendor Claim (the "Vendor Payment") (without interest, penalties, or other charges). For the avoidance of doubt, any amounts that become due and owing by the Debtors to the Vendor for goods or services provided after the Petition Date shall continue to be due and owing and shall be paid in the ordinary course pursuant to the Parties' agreed-upon payment terms.

3. Agreement to Supply.

a. The Vendor shall supply goods to and/or perform services for the Debtors, and the Debtors shall accept and pay for goods and/or services, as applicable, from the Vendor (to the extent the Debtors seek such goods and/or services), for the duration of the Debtors' chapter 11 cases based on the following terms (collectively, the "Customary Trade Terms"): those trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing and price supports, cash discounts, the number of days for timing of payments and payment terms, allowances, as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable, product mix, availability, and other programs) in place in the twelve months prior to the Petition Date, or are otherwise acceptable to the Debtors in light of customary industry practices, except for any partial payments or other payments (or assurances) the Debtors made with respect to any unfinished product. "Duration of the Debtors' chapter 11 cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Debtors' chapter 11 cases; (ii) the closing of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, resulting in a cessation of the Debtors' business operations; or (iii) the liquidation of the Debtors or conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

b. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Debtors except as agreed to in a signed writing by the Parties (email being sufficient).

c. The Vendor shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

d. The Vendor shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Debtors in the ordinary course of business pursuant to the Customary Trade Terms.

e. The Vendor shall not be permitted to terminate or cancel any contract, agreement, or arrangement pursuant to which they provide services to the Debtors for the duration of the Debtors' chapter 11 cases.

f. In the event this Trade Agreement is terminated, such termination will not affect the obligation of the Vendor to make delivery on orders consistent with the Debtors' prior orders and sales accepted by the Vendor prior to the effective date of termination, subject to the provisions contained herein. If this Trade Agreement terminates, the Debtors may require the Vendor to repurchase all unsold goods in the Debtors' inventory, at the Debtors' laid-in cost, with shipping to the Vendor's plant to be paid by the Vendor. The Vendor will pay the Debtors for repurchased inventory seven (7) business days after receipt. Alternatively, the Vendor may designate a party to purchase the Debtors' merchantable inventory of goods at the Debtors' laid-in cost.

4. Other Matters.

a. The Vendor agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Debtors' chapter 11 cases on account of any outstanding administrative claims the Vendor may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. The Vendor agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b. The Vendor will not separately seek payment from the Debtors on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a chapter 11 plan confirmed in the Debtors' chapter 11 cases.

c. The Vendor will not file or otherwise assert against the Debtors, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from prepetition agreements or transactions. Furthermore, if the Vendor has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Vendor will promptly take all necessary actions to remove such liens and hereby authorizes the Debtors to take any such actions on its behalf.

5. Breach.

a. In the event that the Vendor fails to satisfy its undisputed obligations arising under this Trade Agreement (a "Vendor Breach"), upon written notice to the Vendor (email being sufficient), the Vendor shall promptly pay to the Debtors immediately available funds in an amount equal to, at the election of the Debtors, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Debtors from the postpetition receivables then owing to the Vendor from the Debtors.

b. In the event that the Debtors recover the Vendor Payment pursuant to Section 5(a) hereof or otherwise, the Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

c. The Vendor agrees and acknowledges that irreparable damage would occur in the event of a Vendor Breach and remedies at law would not be adequate to compensate the Debtors. Accordingly, the Vendor agrees that, in the event of a Vendor Breach, the Debtors shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions by ordinary motion to the Court (without, for the avoidance of doubt, any requirement that the Debtors commence an adversary proceeding pursuant to Bankruptcy Rule 7003), to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder, not only by an action or actions for damages, but also by an action or actions for specific performance, injunctive relief, and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, in the event of a Vendor Breach, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. The Vendor hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for specific performance, injunctive relief, or other equitable remedies.

6. Notice.

If to the Vendor, then to the person and address identified in the signature block hereto.

If to the Debtors:

Leslie's, Inc.
2005 East Indian School Road
Phoenix, AZ 85016
Attn: Benjamin Lindquist
Email: blindquist@lesl.com

with a copy to:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York, 10017
Attn: Stephanie Marshak, Zachary Weiner, Michael Koch
Email: stephanie.marshak@stblaw.com
zachary.weiner@stblaw.com
michael.koch@stblaw.com

7. Representations and Acknowledgements. The Parties agree, acknowledge, and represent that:

a. the Parties have reviewed the terms and provisions of the Critical Vendor Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendor Order;

b. any payments made on account of the Agreed Vendor Claim shall be subject to the terms and conditions of the Critical Vendor Order;

c. if the Vendor refuses to supply goods or services to the Debtors as provided herein or otherwise fails to perform any of its obligations hereunder, the Debtors may exercise all rights and remedies available under the Critical Vendor Order, the Bankruptcy Code, or applicable law; and

d. in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event no action may be taken by either Party, including, but not limited to, discontinuing shipment of goods or provision of services, as applicable, from the Vendor to the Debtors, until a ruling of the Court is obtained.

8. Confidentiality. In addition to any other obligations of confidentiality between the Vendor and Debtors, the Vendor agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Debtors pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); *provided* that if any party seeks to compel the Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Vendor intends to disclose any or all of the Confidential Information, the Vendor shall immediately provide the Debtors with prompt written notice so that the Debtors may seek an injunction, protective order, or any other available remedy to prevent such disclosure; *provided, further*, that if such remedy is not obtained, the Vendor shall furnish only such information as the Vendor is legally required to provide.

9. Miscellaneous.

a. The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b. This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties. Moreover, Vendor agrees to vote all claims now or hereafter beneficially owned by Vendor in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan proposed by the Debtors on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith as long as such chapter 11 plan provides for a treatment of any Agreed Vendor Claim that is materially consistent with this Trade Agreement.

c. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d. This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

e. The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement, *provided* that, the Debtors shall have the right to enforce this Trade Agreement, including by seeking an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement, in any jurisdiction.

f. This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature Page Follows*]

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

| **[DEBTOR ENTITY]** | **[VENDOR]** |
| --- | --- |
| ____________________ | ____________________ |
| By: [●]<br>Title: [●] | By: [●]<br>Title: [●]<br>Address: [●] |
| Date: [●] | Date: [●] |