**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LESLIE'S, INC., *et al.*,[1] | ) | Case No. 26-90795 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

# AMENDED JOINT PLAN OF REORGANIZATION OF LESLIE'S, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

**HAYNES AND BOONE, LLP**
Charles A. Beckham, Jr. (TX Bar No. 02016600)
Kelli S. Norfleet (TX Bar No. 24070678)
Kourtney Lyda (TX Bar No. 24013330)
Re'Necia Sherald (TX Bar No. 24121543)
Imaan Patel (TX Bar No. 24139247)
1221 McKinney St.
Ste. 4000
Houston, TX 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
Email: charles.beckham@haynesboone.com
kelli.norfleet@haynesboone.com
kourtney.lyda@haynesboone.com
renecia.sherald@haynesboone.com
imaan.patel@haynesboone.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
John R. Luze (admitted *pro hac vice*)
Michael J. Koch (admitted *pro hac vice*)
167 North Green Street, Suite 1400
Chicago, IL 60607
Telephone: (312) 449-5130
Email: jack.luze@stblaw.com
michael.koch@stblaw.com

- and -

Moshe A. Fink (admitted *pro hac vice*)
Stephanie A. Marshak (admitted *pro hac vice*)
Zachary J. Weiner (admitted *pro hac vice*)
425 Lexington Ave
New York, NY 10017
Telephone: (212) 455-3261
Facsimile: (212) 455-2502
Email: moshe.fink@stblaw.com
stephanie.marshak@stblaw.com
zachary.weiner@stblaw.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/lesliespool/. The location of Debtor Leslie's, Inc.'s corporate headquarters and the Debtors' service address in these Chapter 11 Cases is 2005 East Indian School Road, Phoenix, AZ 85016.

## TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS**
A. Defined Terms. 1

**ARTICLE II. RULE OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**
A. Rules of Interpretation. 13
B. Computation of Time. 14
C. Governing Law. 14
D. Reference to Monetary Figures. 14
E. Reference to the Debtors or the Reorganized Debtors. 14
F. Controlling Document. 15
G. Consent Rights. 15

**ARTICLE III. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, AND RESTRUCTURING EXPENSES 15**
A. Administrative Claims. 15
B. Professional Fee Claims. 16
C. Priority Tax Claims. 17
D. Payment of Restructuring Expenses. 17
E. DIP ABL Claims. 18
F. DIP Term Loan Claims. 18

**ARTICLE IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS 18**
A. Classification of Claims and Interests. 18
B. Treatment of Claims and Interests. 19
C. Special Provision Governing Unimpaired Claims. 23
D. Elimination of Vacant Classes. 23
E. Intercompany Interests. 23
F. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. 23
G. Controversy Concerning Impairment. 23
H. Subordinated Claims. 24

**ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN 24**
A. General Settlement of Claims and Interests. 24
B. Restructuring Transactions. 24
C. The Reorganized Debtors. 25
D. Sources of Consideration for Restructuring Transactions. 25
E. Corporate Existence. 29
F. Corporate Action. 29
G. Vesting of Assets in the Reorganized Debtors. 30
H. Cancellation of Notes, Instruments, Certificates, and Other Documents. 30
I. New Organizational Documents. 30
J. Directors and Officers of the Reorganized Debtors. 31
K. Effectuating Documents; Further Transactions. 31
L. Certain Securities Law Matters. 31
M. Section 1146 Exemption. 32
N. Employee Matters. 33
O. MIP. 33
P. Preservation of Causes of Action. 33

**ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.... 34**
A. Assumption and Rejection of Executory Contracts and Unexpired Leases..................... 34
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..................... 35
C. Cure of Defaults and Objections to Cure and Assumption. ............................................ 35
D. Indemnification Policies. ................................................................................................ 36
E. Insurance Policies. .......................................................................................................... 36
F. Reservation of Rights...................................................................................................... 37
G. Nonoccurrence of Effective Date.................................................................................... 37
H. Contracts and Leases Entered Into After the Petition Date. .......................................... 37

**ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS .................................................... 37**
A. Distributions on Account of Claims Allowed as of the Effective Date. .......................... 37
B. Disbursing Agent. ........................................................................................................... 38
C. Rights and Powers of Disbursing Agent. ........................................................................ 38
D. Delivery of Distributions in General............................................................................... 39
E. Manner of Payment......................................................................................................... 40
F. Tax Matters. .................................................................................................................... 40
G. Allocations. ..................................................................................................................... 40
H. Foreign Currency Exchange Rate. .................................................................................. 40
I. Setoffs and Recoupment. ................................................................................................. 40
J. Claims Paid or Payable by Third Parties. ....................................................................... 41

**ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ........................................................................................ 42**
A. Disputed Claims Process. ................................................................................................ 42
B. Allowance of Claims. ...................................................................................................... 42
C. Claims Administration Responsibilities. ........................................................................ 43
E. Adjustment to Claims or Interests without Objection..................................................... 43
F. Time to File Objections to Claims .................................................................................. 44
G. Disallowance of Claims or Interests. .............................................................................. 44
H. No Distributions Pending Allowance. ............................................................................ 44
I. Distributions After Allowance......................................................................................... 44
J. No Interest........................................................................................................................ 45

**ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS....... 45**
A. Discharge of Claims and Termination of Interests. ........................................................ 45
B. Release of Liens............................................................................................................... 45
C. Releases by the Debtors................................................................................................... 46
D. Releases by Holders of Claims and Interests.................................................................. 47
E. Exculpation. .................................................................................................................... 48
F. Injunction......................................................................................................................... 49
G. Protections Against Discriminatory Treatment.............................................................. 50
H. Document Retention. ...................................................................................................... 50
I. Reimbursement or Contribution. ..................................................................................... 50

**ARTICLE X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN .................. 50**
A. Conditions Precedent to the Effective Date. ................................................................... 50
B. Waiver of Conditions....................................................................................................... 52
C. Effect of Failure of Conditions. ...................................................................................... 52

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ............ 52**
A. Modification and Amendments....................................................................................... 52

B. Effect of Confirmation on Modifications. ........ 52
C. Revocation or Withdrawal of Plan. ........ 53

**ARTICLE XII. RETENTION OF JURISDICTION ........ 53**

**ARTICLE XIII. MISCELLANEOUS PROVISIONS ........ 55**
A. Immediate Binding Effect. ........ 55
B. Additional Documents. ........ 55
C. Payment of Statutory Fees. ........ 55
D. Statutory Committee and Cessation of Fee and Expense Payment. ........ 55
E. Reservation of Rights. ........ 56
F. Successors and Assigns. ........ 56
G. Notices. ........ 56
H. Term of Injunctions or Stays. ........ 57
I. Entire Agreement. ........ 57
J. Exhibits. ........ 57
K. Nonseverability of Plan Provisions. ........ 58
L. Votes Solicited in Good Faith. ........ 58
M. Closing of Chapter 11 Cases. ........ 58
N. Waiver or Estoppel. ........ 58

# INTRODUCTION

Leslie's, Inc. and its affiliated debtors and debtors in possession in the Chapter 11 Cases propose this joint plan of reorganization (the "**Plan**") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A hereof. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, and projections of future operations, as well as a summary and description of this Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. "*Adequate Protection Claim*" has the meaning set forth in the DIP Orders.

2. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), including section 503(b)(9) Claims, 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) Adequate Protection Claims; (d) Restructuring Expenses; and (e) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

3. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which (a) with respect to Administrative Claims other than Professional Fee Claims, Adequate Protection Claims, or Restructuring Expenses, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

4. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

5. "*Agent*" means, as applicable, any administrative agent, collateral agent, or similar Entity under the DIP Term Loan Credit Agreement, DIP ABL Credit Agreement, New Term Loan Credit Agreement, the New ABL Facility, the Prepetition ABL Credit Agreement, and/or the Prepetition Term Loan Credit Agreement and any similar Entity or successors thereto.

6. "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for

payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim under the Plan, the Bankruptcy Code, or any other Final Order, a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order. Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. A Claim shall not be permanently disallowed under section 502(d) of the Bankruptcy Code until there is a final judicial determination in an adversary proceeding that the underlying transfer is avoidable. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

7. "*Assumed Executory Contract and Unexpired Lease List*" means, if applicable, the list, as determined by the Debtors, or the Reorganized Debtors, as applicable, of Executory Contracts and/or Unexpired Leases that will be assumed by the Reorganized Debtors, which list, as may be amended from time to time, shall be included in the Plan Supplement.

8. "*Assumed Executory Contracts or Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors as set forth on the Assumed Executory Contract and Unexpired Lease List or in the Plan.

9. "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502(d), 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable Law.

10. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

11. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

12. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time, and as applicable to the Chapter 11 Cases.

13. "*Bar Date Order*" means the order of the Bankruptcy Court setting the final date by which Proofs of Claim may be Filed.

14. "*Business Day*" means any day, other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

15. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

16. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Effective Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Actions.

17. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, any case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, any procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

18. "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

19. "*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to an order of the Bankruptcy Court.

20. "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed, as established by (a) the Bar Date Order; or (b) the Plan.

21. "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

22. "*Class*" means a class of Claims or Interests as set forth in Article IV hereof pursuant to section 1122(a) of the Bankruptcy Code.

23. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

24. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

25. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

26. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

28. "*Confirmation Order*" means the confirmation order with respect to the Plan entered by the Bankruptcy Court.

29. "*Consenting Term Loan Lenders*" has the meaning set forth in the Restructuring Support Agreement.

30. "*Consenting Term Loan Lenders' Advisors*" has the meaning set forth in the Restructuring Support Agreement.

31. "*Consummation*" means the occurrence of the Effective Date.

32. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

33. "*D&O Liability Insurance Policies*" means any insurance policy for, among others, directors, members, trustees and officers' liability (or any equivalents) maintained by the Debtors' Estates, and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

34. "*Debtor Release*" means the release set forth in Article IX.C of the Plan.

35. "*Debtors*" means, collectively, each of Leslie's, Inc., Leslie's Poolmart, Inc., Cortz, Inc., LPM Manufacturing, Inc., Horizon Spa & Pool Parts, Inc., Hot Tub Works, LLC, Pool Parts, Inc., RAM Chemical & Supply, Inc., SPP Holding Corporation, and Stellar Manufacturing, LLC.

36. "*Definitive Documents*" means the documents listed in Section 3.01 of the Restructuring Support Agreement.

37. "*DIP ABL Claims*" means the Claims on account of, arising under, derived from, based on, related to, or in connection with the loans under the DIP ABL Facility or the DIP ABL Credit Agreement, including the DIP ABL Obligations (as defined in the DIP Orders).

38. "*DIP ABL Credit Agreement*" means the credit agreement evidencing the DIP ABL Facility.

39. "*DIP ABL Documents*" means the documents governing the DIP ABL Facility, including the DIP ABL Credit Agreement, the DIP ABL Documents (as defined in the DIP Orders) and the DIP Orders.

40. "*DIP ABL Facility*" means the $225 million senior secured superpriority debtor in possession asset-based revolving credit facility.

41. "*DIP ABL Lender(s)*" means the lenders providing the DIP ABL Facility under the DIP ABL Documents.

42. "*DIP ABL Loan*" has the meaning given to "Loan" in the DIP ABL Credit Agreement.

43. "*DIP Backstop Loans*" has the meaning set forth in the Restructuring Term Sheet.

44. "*DIP Documents*" means the DIP ABL Documents and the DIP Term Loan Documents.

45. "*DIP Orders*" means collectively the Interim DIP Order and the Final DIP Order.

46. "*DIP Premium Loans*" means, collectively, the DIP Backstop Loans and the DIP Upfront Loans.

47. "*DIP Term Loan Claims*" means any Claim on account of, arising under, derived from, based on, related to, or in connection with the DIP Term Loans or the DIP Term Loan Credit Agreement, including the DIP Term Loan Obligations (as defined in the DIP Orders).

48. "*DIP Term Loan Lender(s)*" means the lenders providing the DIP Term Loan Facility under the DIP Term Loan Documents.

49. "*DIP Term Loan Credit Agreement*" means the credit agreement evidencing the DIP Term Loan Facility, as may be amended, supplemented, or otherwise modified from time to time.

50. "*DIP Term Loan Documents*" means the documents governing the DIP Term Loan Facility and the DIP Term Loan Commitment Allocation (as defined in the Restructuring Support Agreement), including the DIP Term Loan Credit Agreement, the DIP Term Loan Documents (as defined in the DIP Orders) and the DIP Orders.

51. "*DIP Term Loan Facility*" means that certain $90.0 million superpriority secured debtor in possession credit facility.

52. "*DIP Term Loans*" has the meaning set forth in the DIP Term Loan Credit Agreement.

53. "*DIP Upfront Loans*" has the meaning set forth in the Restructuring Term Sheet.

54. "*Disbursing Agent*" means the Reorganized Debtors, or the Entity or Entities, including any Agent, selected by the Debtors or the Reorganized Debtors, as applicable, in consultation with the Consenting Term Loan Lenders and the Committee, to make or facilitate distributions pursuant to the Plan.

55. "*Disclosure Statement*" means the disclosure statement with respect to the Plan, that is prepared and distributed to holders of Claims entitled to vote on the Plan, in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable Law, and all exhibits, schedules, supplements, modifications, and amendments thereto.

56. "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and the other Solicitation Materials.

57. "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

58. "*Distribution Date*" means, except as otherwise set forth in this Plan, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, upon which the

Disbursing Agent shall make distributions to holders of Allowed Claims or Interests entitled to receive distributions under the Plan.

59. "*Distribution Record Date*" means the Effective Date or the date or dates determined by the Debtors, in consultation with the Consenting Term Loan Lenders and the Committee.

60. "*Effective Date*" means the date that is the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article X.A of the Plan have been satisfied or waived in accordance with Article X.B of the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

61. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

62. "*Equity Financing*" means the purchase on a several, and not joint and several, basis, in a direct private placement, of an aggregate amount of $60.0 million of the New Common Equity, subject to dilution on account of the MIP.

63. "*Equity Financing Amount*" means $60.0 million.

64. "*Equity Financing Backstop Parties*" means those certain entities set forth on Schedule 2 of the Restructuring Support Agreement.

65. "*Equity Financing Backstop Premium*" means 4.20% of the New Common Equity, subject to dilution on account of the MIP.

66. "*Equity Financing Documents*" means any and all agreements, documents, and instruments delivered or entered into in connection with, or otherwise governing, the Equity Financing, including the Subscription Procedures and Subscription Form (as defined in the Restructuring Support Agreement) and any other materials distributed in connection with the Equity Financing but excluding, for the avoidance of doubt, the New Organizational Documents.

67. "*Equity Financing Participant*" means a Consenting Term Loan Lender that has elected to provide its *pro rata* share of the Equity Financing.

68. "*Equity Financing Securities*" means the New Common Equity (a) offered in the Equity Financing and (b) issued on account of the Equity Financing Backstop Premium, both in the form of Units of the Issuer.

69. "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

70. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) the Committee and each of its members, solely in their respective capacities as such.

71. "*Existing Equity Interest*" means any Interest in the Debtors in existence immediately prior to Consummation, other than Intercompany Interests.

72. "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

73. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

74. "*Final DIP Order*" means an order of the Bankruptcy Court approving the DIP Term Loan Facility and DIP ABL Facility, and authorizing the use of cash collateral on a final basis.

75. "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, vacated, or amended, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn with prejudice or resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be Filed with respect to such order or judgment.

76. "*General Unsecured Claim*" means any unsecured claim against a Debtor that is not (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) an Other Secured Claim, (iv) an Other Priority Claim, (v) a Prepetition ABL Claim, (vi) a Prepetition Term Loan Claim, (vii) an Intercompany Claim, (viii) a Professional Fee Claim, or (ix) any Claim subject to treatment under section 510(b) of the Bankruptcy Code. For the avoidance of doubt, General Unsecured Claim shall not include any deficiency claims of Holders of Prepetition ABL Claims or Prepetition Term Loan Claims.

77. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

78. "*GUC Cash Pool*" means a Cash pool of $500,000.

79. "*Holder*" means each holder of a Claim against or an Interest in the Debtors.

80. "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

81. "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor or an Affiliate of a Debtor.

82. "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor or an Affiliate of a Debtor.

83. "*Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, profits interests or unit of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement) including all issued, unissued, or authorized shares of capital stock, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable

securities or other agreements, arrangement or commitments of any character relating to, or whose value is related to, any interest in any capital stock or ownership right in the equity of the Debtors.

84. "*Interim DIP Order*" means an order of the Bankruptcy Court approving the DIP Term Loan Facility, the DIP ABL Facility, and authorizing the use of cash collateral, on an interim basis.

85. "*Issuer*" means either: (a) Leslie's, Inc., as reorganized on the Effective Date pursuant to the Definitive Documents or (b) a newly formed entity that will, directly or indirectly, own 100% of the Interests in the Reorganized Debtors upon the Effective Date.

86. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

87. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

88. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

89. "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Southern District of Texas.

90. "*MIP*" means an equity incentive plan to be adopted by the New Board, reserving 10% of New Common Equity for equity and/or equity-based awards.

91. "*New ABL Agent*" means the administrative agent and collateral agent in respect of the New ABL Facility under the New ABL Credit Agreement.

92. "*New ABL Credit Agreement*" means the credit agreement evidencing the New ABL Facility.

93. "*New ABL Documents*" means the documents governing the New ABL Facility.

94. "*New ABL Facility*" means (i) with the consent of the DIP ABL Agent and the DIP ABL Lenders, the converted or amended and restated DIP ABL Facility if such facility is converted into a new $225 million senior secured asset-based revolving credit exit facility or (ii) a new senior secured asset-based revolving credit facility, which will refinance the DIP ABL Facility.

95. "*New ABL Lender*" means each lender under the New ABL Credit Agreement from time to time, including each DIP ABL Lender whose loans and commitments under the DIP ABL Facility are converted into loans and commitments under the New ABL Facility pursuant to the Plan, together with its permitted successors and assigns.

96. "*New Board*" means the post-reorganization board of directors or managers, as applicable, of the Reorganized Debtors as of the Effective Date.

97. "*New Common Equity*" means the new Interests of the Issuer issued in connection with the Restructuring Transactions.

98. "*New Organizational Documents*" means, on or after the Effective Date, each organizational document of the Reorganized Debtors, as applicable, and each other governance document for the

Reorganized Debtors and their direct and indirect subsidiaries, including, certificates of incorporation, certificates of formation or certificates of limited partnership (or equivalent organizational documents), certificates of designation, bylaws, limited liability company agreements, shareholders' agreements, and limited partnership agreements, registration rights agreements, and investor rights agreements, and equivalent governing documents, as applicable, which shall be consistent with the Restructuring Support Agreement, this Plan, and applicable law.

99. "*New Term Loan Credit Agreement*" means the credit agreement governing the New Term Loans.

100. "*New Term Loan Documents*" means the New Term Loan Credit Agreement and all other documentation governing the New Term Loan Facility.

101. "*New Term Loan Facility*" means the new $75,000,000 term loan facility issued pursuant to the Restructuring Transactions.

102. *"New Term Loan Lender"* means each lender under the New Term Loan Credit Agreement from time to time, including each Holder of a DIP Term Loan Claim that receives New Term Loans pursuant to the Plan, together with its permitted successors and assigns.

103. "*New Term Loan Obligations*" means all obligations of the borrower and the guarantors to the New Term Loan Lenders and to the New Term Agent (both as defined in the Exit Term Loan Term Sheet), including, without limitation, all principal, accrued interest, costs, premiums and fees.

104. "*New Term Loans*" means the $75,000,000 in aggregate principal amount of new term loans issued under the New Term Loan Facility.

105. *"Offered Equity*" means the New Common Equity offered in the Equity Financing.

106. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

107. "*Other Secured Claim*" means any secured Claim that is not a Prepetition ABL Claim or Prepetition Term Loan Claim.

108. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

109. "*Petition Date*" means the first date any of the Debtors commence a Chapter 11 Case.

110. "*Plan Distribution*" means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under and in accordance with the Plan.

111. "*Plan Supplement*" means, the compilation of documents and forms of documents, schedules, and exhibits to the Plan that will be Filed by the Debtors with the Bankruptcy Court and all exhibits, ballots, solicitation procedures, and other documents and instruments related thereto.

112. "*Prepetition ABL Agents*" means the administrative agent and collateral agents under the Prepetition ABL Credit Agreement.

113. "*Prepetition ABL Claims*" means any Claim on account of, arising under, derived from, based on, related to, or in connection with the Prepetition ABL Credit Agreement.

114. "*Prepetition ABL Credit Agreement*" means the Credit Agreement, dated as of October 16, 2012 (as amended, restated, modified and supplemented from time to time prior to the effectiveness of the Restructuring Support Agreement, including pursuant to Amendment No. 1, dated as of August 16, 2016, Amendment No. 2, dated as of September 29, 2016, Amendment No. 3, dated as of January 13, 2017, Amendment No. 4, dated as of August 13, 2020, Amendment No. 5, dated as of April 12, 2021 and Amendment No. 6, dated as of March 15, 2023, and Amendment No. 7 dated as of April 3, 2024) among Leslie's Poolmart, Inc., as parent borrower, Leslie's, Inc., as holdings, the Subsidiary Borrowers from time to time party thereto, the Lenders from time to time party thereto, Bank of America, N.A. as administrative agent and collateral agent and U.S. Bank National Association, as co-collateral agent.

115. "*Prepetition ABL Facility*" means the prepetition asset-based lending facility provided pursuant to the Prepetition ABL Credit Agreement.

116. "*Prepetition ABL Lenders*" means the lenders under the Prepetition ABL Credit Agreement.

117. "*Prepetition Term Loan Agent*" means Alter Domus (US) LLC, as administrative agent and collateral agent under the Prepetition Term Loan Credit Agreement.

118. "*Prepetition Term Loan Claims*" means any Claim on account of, arising under, derived from, based on, related to, or in connection with the Prepetition Term Loans or the Prepetition Term Loan Credit Agreement.

119. "*Prepetition Term Loan Credit Agreement*" means that certain Amended and Restated Term Loan Credit Agreement, dated as of March 9, 2021, among Leslie's Poolmart, Inc., as borrower, Leslie's, Inc., as holdings, the lenders from time to time party thereto, Alter Domus (US) LLC (as successor to Nomura Corporate Funding Americas, LLC), as administrative agent and collateral agent, as amended, restated, amended and restated or otherwise modified or supplemented from time to time.

120. "*Prepetition Term Loan Documents*" means the Prepetition Term Loan Credit Agreement and each other "Loan Document", as defined therein.

121. "*Prepetition Term Loans*" means loans outstanding under the Prepetition Term Loan Credit Agreement.

122. "*Price Per Unit*" shall be equal to (i) $60 million divided by (ii) the total number of Interests of New Common Equity that comprises 55.8% of the New Common Equity (excluding any Interests reserved for issuance pursuant to the MIP).

123. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

124. "*Pro Rata*" means, unless otherwise indicated, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

125. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code. For the avoidance of doubt, "Professionals" does not include the Consenting Term Loan Lenders' Advisors or advisors to the DIP ABL Agent.

126. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors and the Committee, as set forth in Article III.B hereof.

127. "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

128. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

129. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

130. "*Reinstate*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired. "*Reinstated*" and "*Reinstatement*" shall have correlative meanings.

131. "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

132. "*Related Fund*" means, with respect to any Person, any fund, account or investment vehicle that is controlled, advised or managed by (a) such Person, (b) an Affiliate of such Person or (c) the same investment manager, advisor or subadvisor that controls, advises or manages such Person or an Affiliate of such investment manager, advisor or subadvisor.

133. "*Related Party*" means, collectively, with respect to (w) any Entity or Person, (x) such Entity's or Person's predecessors, successors and assigns, parents, subsidiaries and each of their respective Related Funds, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, and (y) with respect to each of the foregoing in clauses (w) and (x), each of, and in each case in its capacity as such, such Person's or such Entity's current and former directors, managers, officers, observers, Committee members, members of any governing body, equity holders (regardless of whether such Interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, shareholders, partners, limited partners, general partners, principals, members, equity sponsors, fiduciaries, direct and indirect investors, direct and indirect equity participants, "controlling persons" (within the meaning of federal securities law), management companies, fund advisors or managers, employees, secondees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, actuaries, management companies, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, professionals and nominees.

134. "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Term Loan Lender; (d) each DIP Term Loan Lender; (e) each Prepetition ABL Lender; (f) each DIP ABL Lender; (g) the Agents; (h) each current and former Affiliate of each Entity in clause (a) through the following clause (i); and (i) each Related Party of each Entity in clause (a) through clause (h); *provided* that in each case, an Entity shall not be a

Released Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely objects to the releases contained in the Plan and such objection is not resolved before Confirmation.

135. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Term Loan Lender; (d) each DIP Term Loan Lender; (e) each Prepetition ABL Lender; (f) each DIP ABL Lender; (g) all Holders of Claims who vote to accept this Plan and do not affirmatively opt out of the releases set forth herein; (h) all Holders of Claims who are presumed to accept this Plan and do not affirmatively opt out of the releases set forth herein; (i) all Holders of Claims who abstain from voting on this Plan and who do not affirmatively opt out of the releases set forth herein; (j) all Holders of Claims who vote to reject this Plan and who do not affirmatively opt out of the releases set forth herein; (k) all Holders of Claims or Interests who are deemed to reject this Plan and affirmatively opt into the releases provided by this Plan; (*l*) the Agents, and (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); (n) each Related Party of each Entity in clause (a) through clause (m) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that, in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in the Plan; or (y) timely objects to the releases contained in the Plan and such objection is not resolved before Confirmation. For the avoidance of doubt, and notwithstanding anything in the Plan to the contrary, no Holders of Claims or Interests in Class 7 (Existing Equity Interests) or Class 8 (Section 510(b) Claims), in each case solely in their capacity as such, shall be, or shall be deemed to be, Releasing Parties unless they submit an opt in form.

136. "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

137. "*Required Consenting Term Loan Lenders*" has the meaning ascribed to such term in the Restructuring Support Agreement.

138. "*Restructuring Expenses*" means the Consenting Term Loan Lenders Expenses as defined in the Restructuring Support Agreement and the reasonable and documented fees, costs and expenses of the Prepetition Term Loan Agent (including reasonable attorney's fees) whether incurred prior to or after the Petition Date, through the Effective Date.

139. "*Restructuring Steps Memorandum*" means the summary of transaction steps to complete the restructuring contemplated by the Plan, which shall be included in the Plan Supplement.

140. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of September 30, 2026, by and among the Debtors and the Consenting Term Loan Lenders, as may be further amended, modified, or supplemented from time to time in accordance with its terms.

141. "*Restructuring Term Sheet*" has the meaning ascribed to such term in the Restructuring Support Agreement.

142. "*Restructuring Transactions*" means the transactions described in Article V.B of the Plan and the Restructuring Steps Memorandum.

143. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time with the consent of the Debtors and the Required Consenting Term Loan Lenders.

144. "*SEC*" means the Securities and Exchange Commission.

145. "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract.

146. "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

147. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

148. "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

149. "*Solicitation*" means the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

150. "*Solicitation Materials*" means all documents, ballots, notices, forms and other materials provided in connection with the solicitation of votes on the Plan, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code (other than the Disclosure Statement).

151. "*Stapled Obligations and Interests*" has the meaning ascribed to such term in the Restructuring Support Agreement.

152. "*Third-Party Release*" means the release set forth in Article IX.D of the Plan.

153. "*Unexpired Lease*" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

154. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

155. "*Unit*" means each unit of New Common Equity.

## ARTICLE II.
## RULE OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A. Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan, Restructuring Support Agreement, or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes

that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, limited liability company agreement, by-law, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (13) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (14) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (15) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan and the Restructuring Support Agreement all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (16) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

*B. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*C. Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtor, as applicable.

*D. Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

*E. Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

*F. Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

*G. Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of this Plan, all exhibits to the Plan, and the Plan Supplement, and all other Definitive Documents (as defined in the Restructuring Support Agreement), including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein.

Solely with respect to any information, notice, or consent rights in the Plan, in the event of any inconsistency between the Plan and the Restructuring Support Agreement, the terms of the Restructuring Support Agreement shall control.

## ARTICLE III. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, DIP ABL Claims, and DIP Term Loan Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

*A. Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors (with the consent of the Required Consenting Term Loan Lenders, which consent shall not be unreasonably withheld, and in consultation with the Committee) or the Reorganized Debtors, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the

Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise provided in this Article III.A of the Plan, and except with respect to Administrative Claims that are Professional Fee Claims or Restructuring Expenses, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors and the Committee pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party no later than 60 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

*B. Professional Fee Claims.*

1. Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount Allowed by the Bankruptcy Court, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date in accordance herewith.

2. Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors and the Debtors and the Reorganized Debtors shall have no claim whatsoever to or interest in such funds, except to the extent specified in the last sentence of this paragraph. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that such obligations with respect to Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court. Only upon such refunding of the excess amounts in the Professional Fee Escrow Account to the Debtors, shall such funds become property of the Reorganized Debtors.

3. Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than three days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses of the Professionals related to implementation of the Plan and Consummation incurred by the Debtors; *provided*, *however*, that the Debtors shall not pay any monthly, transaction, restructuring, financing, completion, success, or other similar fee unless the Court has approved the retention of such Professional and such fees are approved by the Bankruptcy Court or pursuant to the Plan. For any fees and expenses (other than monthly, transaction, restructuring, financing, completion, success, or other similar fee) incurred from and after the Confirmation Date, the Debtors and Reorganized Debtors, as applicable, shall pay, within ten Business Days after submission of a detailed invoice to the Debtors or Reorganized Debtors, as applicable, reasonable fees and expenses incurred by the Professionals of the Debtors, the Reorganized Debtors, or the Committee, as applicable; provided that such Professionals shall also (i) serve Consenting Term Loan Lenders' Advisors, the Debtors or Reorganized Debtors, the Committee, and the U.S. Trustee (collectively, the "Statement Parties") the monthly statements of such Professionals' claims for compensation or reimbursement of expenses with reasonable detail and (ii) file a notice with the Bankruptcy Court reflecting the amount of the fees and expenses requested by such Professional. If any of the Statement Parties dispute the reasonableness of any such invoice, the disputing Statement Party or the affected Professional may file an objection with the Bankruptcy Court, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

*C. Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

*D. Payment of Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the Restructuring Support Agreement and any other fee arrangements, without any requirement to File a fee application with the Bankruptcy Court, without the need for itemized time detail, or without any requirement for Bankruptcy Court review or approval. All Restructuring Expenses to be

paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors and the Committee at least three (3) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors and the Committee. In addition, the Reorganized Debtors shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses related to implementation, Consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date, without any requirement for Bankruptcy Court review or approval.

*E. DIP ABL Claims.*

All DIP ABL Claims shall be deemed Allowed as of the Effective Date. On the Effective Date, the DIP ABL Facility shall be refinanced by the New ABL Facility, and, in full and final satisfaction of the outstanding DIP ABL Claims, such Claims shall be either (i) with the consent of the DIP ABL Agent and the DIP ABL Lenders refinanced by means of a cashless settlement or (ii) repaid in full and in Cash, including the cancellation, replacement or cash collateralization of all issued and undrawn letters of credit in accordance with the terms and in the amounts specified under the DIP ABL Documents, from the proceeds of the New ABL Facility, as applicable. To the extent the DIP ABL Facility is refinanced by means of a cashless settlement, (i) all principal amount of DIP ABL Loans shall be on a dollar-for-dollar basis automatically converted to and deemed to be obligations under the New ABL Facility, (ii) the letters of credit issued and outstanding under the DIP ABL Credit Agreement shall be converted to letters of credit deemed to be issued and outstanding under the New ABL Documents, (iii) all Collateral that secures the Obligations (each as defined in the DIP ABL Credit Agreement) under the DIP ABL Credit Agreement shall be reaffirmed, ratified and shall automatically secure all Obligations (as defined in the New ABL Documents) under the New ABL Documents, subject to the priorities of Liens set forth in the New ABL Documents, and (iv) each Holder of a DIP ABL Claim shall receive its Pro Rata share of Cash on account of any interest, fees, or expenses outstanding with respect to such Holder's DIP ABL Loans as of the Effective Date. In addition, any fees and expenses of professionals and advisors to the DIP ABL Agent incurred (or reasonably estimated to be incurred) on or prior to the Effective Date (in accordance with the DIP Orders) shall paid in cash in full on or prior to the Effective Date without any requirement for Bankruptcy Court review or approval.

*F. DIP Term Loan Claims.*

All DIP Term Loan Claims shall be deemed Allowed as of the Effective Date. On the Effective Date, in full and final satisfaction of the outstanding DIP Term Loan Claims, (i) $75 million of the DIP Term Loan Claims shall be automatically converted on a dollar-for-dollar basis to and deemed to be New Term Loan Obligations, and (ii) the remaining DIP Term Loan Claims, including on account of the DIP Premium Loans and any accrued or capitalized interest, shall be converted on a ratable basis into 30% in the aggregate of the New Common Equity (subject to dilution on account of the MIP). In addition, any fees and expenses of professionals and advisors to the DIP Term Agent incurred (or reasonably estimated to be incurred) on or prior to the Effective Date (in accordance with the DIP Orders) shall be paid in cash in full on or prior to the Effective Date without any requirement for Bankruptcy Court review or approval.

## ARTICLE IV.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article III hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making distributions in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3A | Prepetition ABL Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3B | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B. *Treatment of Claims and Interests.*

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is

agreed to by the Reorganized Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1. Class 1 - Other Secured Claims

(a) *Classification*: Class 1 consists of all Other Secured Claims.

(b) *Treatment*: Each holder of an Allowed Other Secured Claim shall receive, at the Debtors' option with the consent of the Required Consenting Term Loan Lenders (such consent not to be unreasonably withheld), either:

(i) payment in full in Cash in the ordinary course of business;

(ii) the collateral securing its Allowed Other Secured Claim;

(iii) Reinstatement of its Allowed Other Secured Claim; or

(iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

2. Class 2 - Other Priority Claims

(a) *Classification*: Class 2 consists of all Other Priority Claims.

(b) *Treatment*: Each holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

3. Class 3A – Prepetition ABL Claims

(a) *Classification*: Class 3A consists of all Prepetition ABL Claims.

(b) *Allowance*: To the extent not rolled up into the DIP ABL Facility prior to the Effective Date, on the Effective Date, the Prepetition ABL Claims shall be Allowed in full, plus accrued interest and all other fees, costs, expenses, premiums, and other amounts arising under or in connection with the Prepetition ABL Credit Agreement, without the need to File any Proofs of Claim against the Debtors, and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-

claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person or Entity.

(c) *Treatment*: On the Effective Date, to the extent not rolled up into the DIP ABL Facility, each Holder of an Allowed Prepetition ABL Claim shall have its Allowed Prepetition ABL Claim either (i) with the consent of the Prepetition ABL Agent and the Prepetition ABL Lenders on a dollar-for-dollar basis automatically converted to and deemed to be obligations under the New ABL Facility or (ii) repaid in full and in Cash from the proceeds of the New ABL Facility, as applicable.

(d) *Voting:* Class 3A is Unimpaired under the Plan and Holders of Allowed Claims in Class 3A are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

4. Class 3B – Prepetition Term Loan Claims

(a) *Classification*: Class 3B consists of all Prepetition Term Loan Claims.

(b) *Allowance*: The Prepetition Term Loan Claims shall be Allowed in full, in the aggregate principal amount of $756.6 million, plus accrued interest and all other fees, costs, expenses, premiums, and other amounts arising under or in connection with the Prepetition Term Loan Credit Agreement, without the need to File any Proofs of Claim against the Debtors, and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person or Entity.

(c) *Treatment*: On the Effective Date, each holder of an Allowed Prepetition Term Loan Claim shall receive its Pro Rata share of 10% of the New Common Equity (subject to dilution on account of the MIP).

(d) *Voting*: Class 3B is Impaired under the Plan and holders of Allowed Claims in Class 3B are entitled to vote to accept or reject the Plan.

5. Class 4 - General Unsecured Claims

(a) *Classification*: Class 4 consists of all General Unsecured Claims.

(b) *Treatment*: On the Effective Date, each holder of an Allowed General Unsecured Claim entitled to receive a distribution shall receive its Pro Rata share of the GUC Cash Pool.

(c) *Voting*: Class 4 is Impaired under the Plan and holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

6. Class 5 - Intercompany Claims

(a) *Classification:* Class 5 consists of all Intercompany Claims.

(b) *Treatment:* Each holder of an Allowed Intercompany Claim shall have its Claim Reinstated or cancelled, released, and extinguished without any distribution as reasonably determined by the Debtors or Reorganized Debtors with the consent of the Required Consenting Term Loan Lenders (not to be unreasonably withheld, delayed or conditioned) and in consultation with the Committee.

(c) *Voting:* Class 5 is Unimpaired if the Intercompany Claims are Reinstated or converted to equity or Impaired if the Intercompany Claims are set off, settled, distributed, contributed, cancelled, or released. Holders of Intercompany Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

7. <u>Class 6 - Intercompany Interests</u>

(a) *Classification:* Class 6 consists of all Intercompany Interests.

(b) *Treatment:* Intercompany Interests shall be Reinstated, set off, settled, distributed, contributed, cancelled, and released without any distribution on account of such Intercompany Interests, or such other treatment as reasonably determined by the Debtors with the consent of the Required Consenting Term Loan Lenders (not to be unreasonably delayed, withheld or conditioned).

(c) *Voting*: Class 6 is Unimpaired if the Intercompany Interests are Reinstated or Impaired if the Intercompany Interests are set off, settled, addressed, distributed, contributed, merged, cancelled, or released. Holders of Intercompany Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

8. <u>Class 7 - Existing Equity Interests</u>

(a) *Classification:* Class 7 consists of all Existing Equity Interests.

(b) *Treatment:* On the Effective Date, all Existing Equity Interests shall be cancelled, released and extinguished and will be of no further force and effect, and holders of Existing Equity Interests will not receive any distribution on account thereof.

(c) *Voting*: Class 7 is Impaired under the Plan. Holders of Existing Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

9. Class 8 – Section 510(b) Claims

(a) *Classification*: Class 8 consists of all Section 510(b) Claims.

(b) *Treatment*: All Section 510(b) Claims shall be discharged and released, and each holder of a Section 510(b) Claim shall not receive or retain any distribution, property, or other value on account of its Section 510(b) Claim.

(c) *Voting*: Class 8 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

*C. Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

*D. Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

*E. Intercompany Interests.*

To the extent Reinstated under the Plan, for the avoidance of doubt, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Common Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.

*F. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article IV.B hereof. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*G. Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date or such other date as fixed by the Bankruptcy Court.

*H. Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, and subject to the Restructuring Support Agreement, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VII hereof, all distributions made to holders of Allowed Claims and Allowed Interests, as applicable, in any Class are intended to be and shall be final.

*B. Restructuring Transactions.*

On or before the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into and shall take all actions as may be necessary, appropriate, or desirable to effectuate the Restructuring Transactions, including as set forth in the Restructuring Steps Memorandum, that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Support Agreement. The actions to implement the Restructuring Transactions may include but shall not be limited to: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (4) the issuance of the New Common Equity (including in connection with the Equity Financing); (5) the execution and delivery of the New Term Loan Documents and any filing related thereto; (6) the execution and delivery of the New ABL Documents and any filing related thereto; (7) the execution and delivery of the New Organizational Documents of each Reorganized Debtor; (8) funding of the GUC Cash Pool; and (9) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan. The Confirmation Order shall and shall

be deemed pursuant to sections 363 and 1123 of the Bankruptcy Code to authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, for the avoidance of doubt, any and all actions required to be taken under applicable non-bankruptcy law.

The terms of the Restructuring Transactions will be structured to maximize tax efficiencies for each of the Debtors and the Consenting Term Loan Lenders, as agreed to by the Debtors and the Required Consenting Term Loan Lenders, in consultation with the Committee, and in accordance with the Plan and the Plan Supplement.

*C. The Reorganized Debtors.*

On the Effective Date, the New Board shall be established and, if applicable, the Reorganized Debtors shall adopt the New Organizational Documents. Such New Organizational Documents shall become effective and binding in accordance with their terms and conditions, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any person or Entity. The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan. Cash payments to be made pursuant to the Plan will be made by the Debtors, Reorganized Debtors, or Disbursing Agent.

*D. Sources of Consideration for Restructuring Transactions.*

The Debtors and the Reorganized Debtors, as applicable, shall fund or otherwise effect the distributions and the Restructuring Transactions contemplated under the Plan with: (1) the New Term Loans, which shall be used to refinance, in part, the term loans under the DIP Term Loan Credit Agreement; (2) the New ABL Facility, which shall be used to refinance the revolving loans under the DIP ABL Credit Agreement; (3) the issuance of the New Common Equity, including through the Equity Financing; and (4) Cash on hand as of the Effective Date.

*1. New Term Loans.*

On the Effective Date, the Reorganized Debtors shall incur the New Term Loans pursuant to the terms set forth in the New Term Loan Documents. Confirmation of the Plan shall be deemed approval of the New Term Loan Facility and the New Term Loan Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the New Term Loan Documents and such other documents as may be required, advisable, or convenient to effectuate the treatment afforded by the New Term Loan Facility. Execution of the New Term Loan Credit Agreement by the Agent under the New Term Loan Credit Agreement shall be deemed to bind all holders of DIP Term Loan Claims and all New Term Loan Lenders as if each such holder or New Term Loan Lender had executed the New Term Loan Credit Agreement with appropriate authorization. Each Reorganized Debtor and each other guarantor or grantor under the New Term Loan Documents is authorized to enter into and perform thereunder without further corporate or other action. The obligations under the New Term Loan Documents, including the guarantees thereof, shall constitute legal, valid, binding, and enforceable obligations of each party thereto and shall not be subject to avoidance, recharacterization, subordination, setoff, or other challenge under the Bankruptcy Code or applicable non-bankruptcy law.

On the Effective Date, all of the Liens and security interests to be granted or confirmed (as applicable) pursuant to, or in connection with, the New Term Loan Documents (including any Liens and security interests granted or confirmed (as applicable) on the Reorganized Debtors' assets) (a) shall be deemed to be granted or confirmed (as applicable), (b) shall be valid, legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Term Loan Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Term Loan Documents, and (d) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary, advisable, or convenient to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically on the Effective Date by virtue of the entry of the Confirmation Order and the occurrence of the Effective Date and any such filings, recordings, approvals, and consents shall not be required for perfection), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

*2. <u>New ABL Facility</u>.*

On the Effective Date, the Reorganized Debtors shall incur the New ABL Facility pursuant to the terms set forth in the New ABL Documents. Confirmation of the Plan shall be deemed approval of the New ABL Facility and the New ABL Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the New ABL Documents and such other documents as may be required, advisable, or convenient to effectuate the treatment afforded by the New ABL Facility. Execution of the New ABL Credit Agreement by the New ABL Agent under the New ABL Credit Agreement shall be deemed to bind all New ABL Lenders as if each such New ABL Lender had executed the New ABL Credit Agreement with appropriate authorization. Each Reorganized Debtor and each other guarantor or grantor under the New ABL Documents is authorized to enter into and perform thereunder without further corporate or other action. The obligations under the New ABL Documents, including the guarantees thereof, shall constitute legal, valid, binding, and enforceable obligations of each party thereto and shall not be subject to avoidance, recharacterization, subordination, setoff, or other challenge under the Bankruptcy Code or applicable non-bankruptcy law.

On the Effective Date, all of the Liens and security interests to be granted or confirmed (as applicable) pursuant to, or in connection with, the New ABL Documents (including any Liens and security interests granted or confirmed (as applicable) on the Reorganized Debtors' assets) (a) shall be deemed to be granted or confirmed (as applicable), (b) shall be valid, legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New ABL Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New ABL Documents, and (d) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary, advisable, or convenient to establish and

perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically on the Effective Date by virtue of the entry of the Confirmation Order and the occurrence of the Effective Date and any such filings, recordings, approvals, and consents shall not be required for perfection), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

*3. New Common Equity.*

On the Effective Date, the Issuer shall issue the New Common Equity pursuant to the Equity Financing and the Plan. The issuance of the New Common Equity, including the New Common Equity on account of the DIP Term Loan Claims (including on account of the DIP Premium Loans and any accrued or capitalized interest) and Equity Financing Backstop Premium, by the Issuer shall be authorized without (1) the need for any further corporate, limited liability company, partnership, or other governance action and without any action by the holders of Claims, members, managers, directors, or officers of the Debtors or Reorganized Debtors, as applicable, or other parties in interest, (2) notice to or order or other approval of the Bankruptcy Court, (3) act or omission under applicable law, regulation, order, or rule, or (4) vote, consent, authorization, or approval of any Person.

All of the Units of New Common Equity, including such Units issued in connection with the DIP Term Loan Claims (including the DIP Premium Loans and any accrued or capitalized interest) and Equity Financing Backstop Premium, issued pursuant to the Equity Financing and the Plan shall be duly authorized, validly issued, fully paid, and non-assessable and deemed not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law. Each distribution and issuance of New Common Equity shall be governed by the terms and conditions set forth in the Equity Financing Documents, the New Organizational Documents, and the Plan, as applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s). Any Entity's acceptance of New Common Equity shall be deemed to constitute its agreement to enter into, and the New Common Equity shall be subject to, the applicable New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. The New Common Equity will not be registered under the Securities Act nor listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Equity (other than the Equity Financing Securities) on account of the DIP Term Loan Claims and Allowed Prepetition Term Loan Claims, in accordance with the terms of the Plan, shall be exempt from the registration and prospectus delivery requirements of the Securities Act and any other applicable federal, state, or local law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, and sale of a security. In addition (and to the extent that section 1145 shall be deemed not to apply to any New Common Equity), pursuant to Section 4(a)(2) of the Securities Act, the offering, issuance, and distribution of New Common Equity (including the Equity Financing Securities) is exempt from the registration and prospectus delivery requirements of the Securities Act and any applicable federal, state, or local law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, and sale of a security. Such New Common Equity (including the Equity Financing Securities) issued under Section 4(a)(2) of the Securities Act will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act and other

applicable law. The New Common Equity underlying the MIP will be issued pursuant to an available exemption from the registration requirements under the Securities Act and other applicable law. Subject to any transfer restrictions set forth in the New Organizational Documents, holders of restricted securities will, however, be permitted to resell New Common Equity without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A under the Securities Act (if available) or any other exemption from registration under the Securities Act, or if such securities are registered with the SEC.

Confirmation of the Plan shall be deemed approval of (1) the Equity Financing and the Equity Financing Documents and (2) all transactions contemplated thereby, and all actions to be taken and undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the Equity Financing Documents, and such other documents as may be required to effectuate the Equity Financing.

4. *Cash on Hand*.

The Debtors or Reorganized Debtors, as applicable, shall use Cash on hand as of the Effective Date to fund distributions, consistent with the terms of the Plan.

5. *Equity Financing.*

On the Effective Date, the Debtors shall consummate the Equity Financing, through which each Equity Financing Participant shall be obligated to purchase New Common Equity at the Price Per Unit, subject to the terms and conditions set forth in the Plan and the Restructuring Support Agreement. The Price Per Unit shall be payable in Cash. On or prior to the Effective Date, the Equity Financing Participants will be required to fund into escrow with a bank, trust company, or other agent approved by the Debtors and the Required Consenting Term Loan Lenders an amount equal to the Price Per Unit for such Equity Financing Participant's allocable share of the Equity Financing Amount for the express benefit of the Reorganized Debtors. Upon Consummation, such Cash shall be released to the Reorganized Debtors for their use in accordance with this Plan and New Organizational Documents.

The percentage ownership attributable to the New Common Equity offered in the Equity Financing will be equal to 55.8% of the New Common Equity (subject to dilution on account of the MIP).

The Equity Financing shall be backstopped by the Equity Financing Backstop Parties in accordance with the terms and subject to the conditions of the Restructuring Support Agreement. Subject to, and in accordance with the Restructuring Support Agreement, as consideration for the commitments of the Equity Financing Backstop Parties under the Restructuring Support Agreement, the Equity Financing Backstop Parties shall receive the Equity Financing Backstop Premium, which shall be fully earned and nonrefundable upon entry by the Bankruptcy Court of the Disclosure Statement Order, and payable on the Effective Date. The commitments of the Equity Financing Backstop Parties under the Restructuring Support Agreement are several, not joint, obligations of the Equity Financing Backstop Parties, such that no Equity Financing Backstop Party shall be liable or otherwise responsible for the commitments of any other Equity Financing Backstop Party under the Restructuring Support Agreement. Following the Subscription Deadline (as defined in the Restructuring Support Agreement), no Equity Financing Backstop Party shall be permitted to transfer (including, for the avoidance of doubt, any sale, exchange, assignment, pledge or encumbrance) any Stapled Obligations and Interests without the prior written consent of the Debtors, which consent shall not be unreasonably withheld, conditioned or delayed, subject to the terms of the Restructuring Support Agreement; *provided*, the Debtors' prior written consent shall not be required for such transfers to any other Equity Financing Backstop Party, Affiliate or Affiliate fund. For the avoidance

of doubt, any transfer must also include a ratable transfer of such transferring party's Stapled Obligations and Interests.

The proceeds of the Equity Financing shall be used by the Reorganized Debtors for working capital and general corporate purposes.

*E. Corporate Existence.*

Except as otherwise provided in the Plan or Plan Supplement, or any agreement, instrument, or other document incorporated in the Plan or in the Plan Supplement, each Debtor, as a Reorganized Debtor, shall continue to exist after the Effective Date, as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended, amended and restated, or replaced under the Plan or otherwise, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended, amended and restated, or replaced pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). On or after the Effective Date, the respective certificate of incorporation and bylaws (or other organizational documents) of one or more of the Reorganized Debtors may be amended or modified in accordance with the terms thereof without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On or after the Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*F. Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of the agreements with existing management; (2) selection of the directors, managers, and officers for the Reorganized Debtors in accordance with the Restructuring Support Agreement; (3) implementation of the Restructuring Transactions; (4) incurrence of the New Term Loans and entry into the New Term Loan Documents; (5) incurrence of the New ABL Facility and entry into the New ABL Documents; (6) issuance of the New Common Equity, including pursuant to the Equity Financing; (7) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (8) adoption of the New Organizational Documents; (9) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (10) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). On the Effective Date, the New Term Loans, the New ABL Facility, and the New Common Equity shall be automatically deemed outstanding without any signatures or other acts required by any holders of Prepetition ABL Claims or Prepetition Term Loan Claims, as applicable. On or prior to the Effective Date, all actions required by this Plan that would otherwise require approval of the holders of Interests, members, directors, or officers of the Debtors (as of prior to the Effective Date) or Reorganized Debtors shall be deemed to have been so approved and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the holders of Interests, members, directors, or officers of the Debtors or the Reorganized Debtors, or the need for any approvals, authorizations, actions, or consents of the appropriate holders of Interests, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. For the avoidance of doubt, the appropriate holders of Interests, members, directors, or

officers of the Debtors or the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) including the New Term Loan Documents, the New ABL Documents, the New Common Equity, the New Organizational Documents, in the name and on behalf of the Reorganized Debtors and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article V.F shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

*G. Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Confirmation Order, the Plan (including, for the avoidance of doubt, the Restructuring Steps Memorandum), or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, other encumbrances, and interests. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects. For the avoidance of doubt, the Plan and Confirmation Order shall be conclusively deemed to be adequate notice that Liens, Claims, charges, interests, and other encumbrances are being extinguished.

*H. Cancellation of Notes, Instruments, Certificates, and Other Documents.*

On the Effective Date, except for the purposes of evidencing a right to a distribution under the Plan and except to the extent otherwise provided herein or the Confirmation Order, as applicable, all loans, notes, instruments, certificates, credit agreements, indentures, Securities and other documents evidencing Claims or Interests, including the DIP Documents, the Prepetition Term Loan Credit Agreement and the Prepetition ABL Credit Agreement, the Existing Equity Interests, and each related document thereto, shall be cancelled or otherwise terminated, and the rights of holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect; *provided* that any indemnity, reimbursement, or similar provision in favor of the Agents in any credit agreement, note purchase agreement, security document, ancillary document, or intercreditor agreement related to the Prepetition Term Loans or the Prepetition ABL Facility that by its terms survives the termination of such agreement or document shall remain in full force and effect notwithstanding the consummation of the Restructuring Transactions or the release provisions contained in Article IX.D. of this Plan; and *provided, further*, that such agreements and documents shall continue in effect solely to the extent necessary to permit the Agents to exercise such surviving rights and perform such surviving obligations including to (a) allow the Agents to make distributions in accordance with the Plan and the existing documents; (b) allow the Agents to seek and/or receive compensation and/or reimbursement of fees and expenses in accordance with the Plan, the DIP Order, or any other order of the Bankruptcy Court; (c) allow the Agents to enforce any rights and obligations owed to them under the DIP Order, this Plan, or the Confirmation Order, and (d) permit the Agents to perform any functions that are necessary to effectuate any of the foregoing. On the Effective Date, the Agents and their respective agents, successors, and assigns shall be fully relieved and discharged from all of their duties and obligations under the DIP Documents, the Prepetition Term Loan Credit Agreement and the Prepetition ABL Credit Agreement.

*I. New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically adopted or amended in a manner consistent with the terms and conditions set forth in the Restructuring Support Agreement by the applicable Reorganized Debtors, as may be necessary to effectuate the Restructuring Transactions contemplated by the Plan. Such New Organizational Documents shall become effective and binding in accordance with their terms and conditions, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any person or Entity. On or prior to the Effective Date or as soon thereafter as is practicable, and to the extent required under the Plan or applicable non-bankruptcy law, each Reorganized Debtor will file its New Organizational Documents with the applicable Secretary of State or other applicable authority in its respective state, province, or country of organization if and to the extent required in accordance with the applicable laws of the respective state or country of organization. The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the Reorganized Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Organizational Document. For the avoidance of doubt, each holder of New Common Equity shall be deemed to have executed, be a party to and be bound by the terms of the New Organizational Documents from and after the Effective Date, even if not an actual signatory thereto and without the need to deliver signature pages thereto.

*J. Directors and Officers of the Reorganized Debtors.*

On the Effective Date, the terms of the current members of the board of directors or managers (as applicable) of Leslie's, Inc. shall be automatically terminated without any further action of the Reorganized Debtors, and the members for the initial term of the New Board shall be appointed in accordance with the applicable New Organizational Documents. The current members of the board of directors or managers (as applicable) of Leslie's, Inc., in their capacities as such, shall have no continuing obligations to Leslie's, Inc. or the Reorganized Debtors on or after the Effective Date, and each such director or manager (as applicable) shall be deemed to have resigned or shall otherwise cease to be a director or manager (as applicable) of Leslie's, Inc. on the Effective Date. The members of the New Board shall be identified in the Plan Supplement. The management structure of the Reorganized Debtors, and all officers and management decisions with respect to the Reorganized Debtors and (and/or any of its direct or indirect subsidiaries), compensation arrangements, and Affiliate transactions shall be subject to the required approvals and consents set forth in the New Organizational Documents.

From and after the Effective Date, each director, officer, or manager of the Reorganized Debtors shall be appointed and serve pursuant to the terms of their respective charters and bylaws or other formation and constituent documents, and the New Organizational Documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.

*K. Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and their respective officers, directors, members, or managers, as applicable, are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Steps

Memorandum, the New Term Loan Documents, the New ABL Documents, the New Organizational Documents, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, actions, notices, or consents except for those expressly required pursuant to the Plan.

*L. Certain Securities Law Matters*

All equity interests of the Reorganized Debtors issued and distributed pursuant to the Plan, including the New Common Equity, will be issued and distributed without registration under the Securities Act or any similar federal, state, or local law in reliance upon: (i) an exemption from such registration requirements under section 1145 of the Bankruptcy Code; (ii) an exemption from such registration requirements under Section 4(a)(2) of the Securities Act; and (iii) such other exemption as may be available from any applicable registration requirements.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, exchange, and distribution of the New Common Equity (other than the Equity Financing Securities) to holders of DIP Term Loan Claims and Allowed Prepetition Term Loan Claims on account of such Claims, as contemplated by Article III.F and Article IV.B hereof, shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, exchange, distribution, or sale of Securities, to the maximum extent possible. Under section 1145 of the Bankruptcy Code, such New Common Equity will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of (i) section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities or instruments, and (iii) any restrictions in the Reorganized Debtors' New Organizational Documents.

The Equity Financing Securities (and to the extent that section 1145 shall be deemed not to apply to any New Common Equity, such New Common Equity) will be issued in reliance upon the exemption from registration under the Securities Act set forth in Section 4(a)(2).

To the extent New Common Equity is issued pursuant to the exemption from registration set forth in Section 4(a)(2) of the Securities Act, it will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom. Subject to any transfer restrictions set forth in the New Organizational Documents, holders of restricted securities will, however, be permitted to resell New Common Equity without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A under the Securities Act (if available) or any other exemption from registration under the Securities Act, or if such securities are registered with the SEC.

The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date; provided that the Confirmation Order shall provide that the New Common Equity is exempt from registration as set forth in this Article V.L.

*M. Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, Security, or other Interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the

creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for any or all of the New Term Loans or the New ABL Facility; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego imposition or the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*N. Employee Matters.*

The Reorganized Debtors may, in the ordinary course of business and consistent with past practice, continue their wages, compensation, and benefits programs. On the Effective Date, the Debtors shall (a) assume all existing employment agreements, indemnification agreements, or other employment-related agreements entered into with current and former employees or (b) with the consent of the Required Consenting Term Loan Lenders (not to be unreasonably withheld or delayed) and upon advance notice to the Committee, enter into new agreements with such employees on terms and conditions acceptable to the Debtors and such employee.

For the avoidance of doubt, the Debtors shall not assume (i) equity or equity-based incentive plans, employee stock purchase plans and any other agreements or awards or provisions set forth in any agreements, awards, plans or programs that provide for rights to acquire Interests or New Common Equity and (ii) any agreement or plan whose value or performance is related to Interests or New Common Equity or other ownership interests of any Debtor, in each case, which shall be deemed to be terminated on the Effective Date; provided, for the avoidance of doubt, that the Restructuring Transactions shall not trigger or be deemed to trigger (i) any change of control, change in control, immediate vesting, termination or similar provision therein or (ii) an event of "good reason" (or a term of like import) as a result of the consummation of the Restructuring Transactions.

*O. MIP.*

After the Effective Date, the New Board shall adopt the MIP, with the form of the awards under the MIP (e.g., options, restricted stock or units, appreciation rights, etc.), the participants in the MIP, the allocations of the awards to such participants (including the amount of allocations and the timing of the grant of the awards), the terms and conditions of the awards (including vesting, exercise prices, base values, hurdles, forfeiture, repurchase rights and transferability) to be determined by the New Board in consultation with the Reorganized Debtors' senior management team.

*P. Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX hereof.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX** hereof**.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article IX hereof, or pursuant to Bankruptcy Court order. The Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease of the Debtors is deemed to be an Assumed Executory Contract or Unexpired Lease, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumptions or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the

Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein or in any other order of the Bankruptcy Court, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date (but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors) by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or pursuant to any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by any order of the Bankruptcy Court authorizing and providing for its assumption or rejection under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List at any time through and including fifteen (15) days after the Effective Date by motion to the Bankruptcy Court.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan conditions, restricts or prevents, or purports to condition, restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition a renewal or extension, or modify any term or condition upon any assignment of such Executory Contract or Unexpired Lease (including any “change of control” or similar provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

*B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Claims and Noticing Agent and served on the Reorganized Debtors by the later of (1) the Claims Bar Date and (2) 30 days after the latest of (i) entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection ; (ii) the applicable effective date of such rejection; and (iii) the Plan Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Claims and Noticing Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article IX.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article IV.B of the Plan and may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C. *Cure of Defaults and Objections to Cure and Assumption.*

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter, with the amount and timing of payment of any such Cure dictated by the Debtors' prepetition terms with such contract counterparty and, to the extent applicable, any critical vendor trade agreement. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract, all requests for payment of Cure with regard to any Executory Contract that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure; *provided* that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before 30 days after the Effective Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing, or such other setting as requested by the Debtors or Reorganized Debtors, for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VI, in the amount and at the time dictated by the Debtors' prepetition terms with such contract counterparty and, to the extent applicable, any critical vendor trade agreement, shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim, or Claims set forth on the Schedules, based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article VI, in the amount and at the time dictated by the Debtors' prepetition terms with such contract counterparty and, to the extent applicable, any critical vendor trade agreement, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court and can be expunged from the Claims Register (including by the Claims and Solicitation Agent)**.

*D. Indemnification Policies.*

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Restructuring Transactions. For the avoidance of doubt, nothing herein shall expand any of the indemnification provisions in place as of the Petition Date or constitute a finding or conclusion that any party that may seek indemnification is entitled to indemnification under the terms of such indemnification provisions or is intended to effectuate the survival of any indemnification provisions for any other parties.

*E. Insurance Policies.*

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Reorganized Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments related thereto, including all D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair or otherwise modify any indemnity obligations presumed or otherwise referenced in the foregoing insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtors shall not terminate, or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect or purchased as of the Petition Date, and all members, managers, directors and officers of the Reorganized Debtors who served in such capacity at any time prior to the Effective Date or any other individuals covered by such D&O Liability Insurance Policy shall be entitled to the full benefits of any such policy for the full term of such policy (and all tail coverage related thereto) regardless of whether such members, managers, directors and/or officers remain in such positions after the Effective Date, all in accordance with and subject in all respects to the terms and conditions of the D&O Liability Insurance Policies.

*F. Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

*G. Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

*H. Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.* Distributions on Account of Claims Allowed as of the Effective Date.

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as applicable, and the holder of the applicable Claim, in consultation with the Committee, on the first Distribution Date, the Disbursing Agent shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date or as soon as reasonably practical thereafter, subject to the Reorganized Debtors' right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article III.C hereof. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. A Distribution Date shall occur no more frequently than once in every ninety (90) day period after the Effective Date, as necessary, in the Reorganized Debtors' sole discretion. For the avoidance of doubt, the Distribution Record Date shall not apply to distributions to holders of public Securities.

*B. Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

*C. Rights and Powers of Disbursing Agent.*

1. <u>Powers of the Disbursing Agent</u>.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court,

pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors. In the event that the Reorganized Debtors object to all or any portion of the amounts requested to be reimbursed in a Disbursing Agent's invoice, the Reorganized Debtors and such Disbursing Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Reorganized Debtors and Disbursing Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

3. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

*D. Delivery of Distributions in General.*

Except as otherwise provided herein, the Disbursing Agent shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided further* that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder, if applicable.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise required or provided in the applicable agreements.

Distributions on account of the Prepetition Term Loan Credit Agreement Claims shall be made at the direction of the Prepetition Term Loan Agent in accordance with the Prepetition Term Loan Documents, subject to the rights of the Prepetition Term Loan Agent to exercise its priority right to payment against such distributions in accordance with the Prepetition Term Loan Documents regardless of whether such distributions are made by the Prepetition Term Loan Agent or at its direction.

1. Minimum Distributions.

No fractional shares of New Common Equity shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Equity that is not a whole number, the actual distribution of shares of New Common Equity shall be rounded as follows:

(a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Common Equity to be distributed to holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding. The Reorganized Debtors shall not have any obligation to make a distribution that consists of less than one share of New Common Equity or is less than $100.00 to any holder of an Allowed Claim.

2. Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any holder of Allowed Claims is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder as soon as reasonably practicable without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date of the distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims to such property or Interest in property shall be discharged and forever barred.

3. Surrender of Cancelled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with this Plan shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under the Plan, charging Liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims or Interests that are Unimpaired under the Plan.

*E. Manner of Payment.*

Except as otherwise set forth herein, all distributions of New Common Equity to Holders of the applicable Allowed Claims under the Plan (in addition to all issuances of New Common Equity pursuant to the Equity Financing), shall be made by the Debtors or Reorganized Debtors, as applicable, on the Effective Date. All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Reorganized Debtor. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements (or customary practices of the Debtors).

*F. Tax Matters.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors and Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding

any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of any distribution to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information or forms necessary to facilitate such distributions (including the determination of any withholding in connection therewith), or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent an appropriate IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8.

*G. Allocations.*

Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

*H. Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

*I. Setoffs and Recoupment.*

Except as expressly provided in the DIP Orders and this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder. In no event shall any holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XIII.G hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

*J. Claims Paid or Payable by Third Parties.*

1. <u>Claims Paid by Third Parties</u>.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action,

order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2. Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

This Article VIII shall not apply to Prepetition ABL Claims or Prepetition Term Loan Claims, which Claims shall be Allowed in full, without the need to File any Proofs of Claim against the Debtors, and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person or Entity.

*A. Disputed Claims Process.*

On or before the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall be authorized, but not directed, to establish one or more reserves for alleged General Unsecured Claims that are Disputed, contingent, or have not yet been Allowed, in an estimated amount or amounts as reasonably determined by the applicable Debtors or Reorganized Debtors, as applicable, in their discretion, consisting of the applicable consideration in the same proportions and amounts as provided for in the Plan. The Reorganized Debtors shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims or Interests are resolved by a Final Order or agreed to by

settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed as Claims as of the Effective Date under Article III of the Plan solely to the extent of the amounts available in the applicable reserves. For U.S. tax purposes, any assets held in any such reserve may be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9. If such rules apply, under U.S. tax principles, such assets would be subject to entity-level taxation, and the Debtors and Reorganized Debtors would be required to comply with the relevant rules. However, it is unclear whether U.S. tax principles will apply to any such reserve and, as a result, the tax consequences of such a reserve may vary. In all circumstances, the Debtors and Reorganized Debtors will comply with any relevant rules.

*B. Allowance of Claims.*

The Debtors or the Reorganized Debtors, as applicable, shall have the exclusive authority to determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed. Upon such determination, the Debtors or the Reorganized Debtors, as applicable, may update the Claims Register to reflect such Proofs of Claim as Allowed and, upon delivery of the applicable treatment for such Unimpaired Claims under Article IV.B (including, for the avoidance of doubt, Reinstatement), to mark such Proofs of Claim as satisfied. The Debtors may determine, with the consent of the Required Consenting Term Loan Lenders, to Reinstate a claim that would be an Unimpaired Claim under the Plan, even if no timely Proof of Claim is Filed therefor.

After the Effective Date and subject to the terms of this Plan, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date and no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

*C. Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article V.P of this Plan.

*D. Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by

the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

*E. Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended or superseded may be adjusted or expunged on the Claims Register by the Debtors or Reorganized Debtors without the Debtors or Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

*F. Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims. For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Claims set forth in this paragraph at any time, including before or after the expiration of 180 days after the Effective Date, in its discretion or upon request by the Debtors, Reorganized Debtors, or any party in interest.

*G. Disallowance of Claims or Interests.*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

Except as otherwise provided herein, if a party Files a Proof of Claim and the Debtors or the Reorganized Debtors, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VIII of the Plan. Except as otherwise provided herein or as agreed to by the Reorganized Debtors, any and all Proofs of Claim Filed after the Claims Bar Date shall be disallowed and forever barred, estopped, and enjoined from assertion and expunged as of the Effective Date, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

*H. No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or

Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

*I. Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

*J. No Interest.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, including the DIP Orders, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A. Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided herein or in the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan or Confirmation Order, including the Plan Supplement and Definitive Documents, the distributions, rights, and treatment that are provided herein shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims that the Reorganized Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action (including any Causes of Action or Claims based on theories or allegations of successor liability) that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (c) the holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default or "event of default" by the Debtors or their non-Debtor Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective

Date, except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan.

### *B. Release of Liens.*

**Except as otherwise provided in or pursuant to the New Term Loan Documents, the New ABL Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article IV.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, other than, for the avoidance of doubt, the Liens and security interests granted pursuant to, or in connection with, the New Term Loan Documents and the New ABL Documents. Any holder of such Secured Claim, and the applicable agents for such holder, shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor, including any cash collateral and possessory collateral, held by such holder and the applicable agents for such holder, and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

### *C. Releases by the Debtors.*

**Effective on the Effective Date, except (i) as expressly set forth herein or in the Confirmation Order, and (ii) for the right to enforce the Plan, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties (as defined below) in facilitating the implementation of the Restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by and on behalf of each and all of the Debtors, and each of their respective current and former Affiliates, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates that such Entity would have been legally entitled to assert in its own right, whether individually or collectively, or on behalf of the holder of any Claim against, or Interest in, a Debtor or any other Entity, or that any holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including the capital structure, management, ownership, or operation thereof or otherwise, the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or**

**interactions between or among any Debtor and any Released Party, the Debtors' in or out-of-court restructuring efforts, intercompany transactions, the Prepetition ABL Credit Agreement, the Prepetition Term Loan Credit Agreement, the New Term Loan Facility, the New ABL Facility, the DIP ABL Facility, the DIP Term Loan Facility, the DIP Orders, the Equity Financing, the Restructuring Transactions, the Confirmation Order, the Restructuring Support Agreement, the Chapter 11 Cases, the Plan, including the Plan Supplement, the Disclosure Statement, all other Definitive Documents, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the negotiation, formulation, preparation, dissemination, filing, or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Prepetition Term Loan Credit Agreement, the Prepetition ABL Credit Agreement, the New Term Loan Facility, the New ABL Facility, the DIP Term Loan Facility, the DIP ABL Facility, the DIP Orders, the Equity Financing, the Restructuring Transactions, or the Plan, the Disclosure Statement, the Filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan; (ii) the rights of any holder of Allowed Claims to receive distributions under this Plan; (iii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement; or (iv) any Claims against a Released Party arising from actual fraud, willful misconduct, or gross negligence, in each case, as determined by a Final Order.**

***D. Releases by Holders of Claims and Interests.***

**Effective on the Effective Date, except (i) as expressly set forth herein or in the Confirmation Order, and (ii) for the right to enforce the Plan, in exchange for good and valuable consideration, including the contributions and services of the Released Parties in facilitating the implementation of the Restructuring Transactions contemplated by the Plan, the adequacy of which is hereby confirmed, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by and on behalf of each**

**and all of the Releasing Parties, other than the Debtors or the Reorganized Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, remedies, and liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates that such Entity would have been legally entitled to assert in its own right, whether individually or collectively, or on behalf of the holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, or their Estates or other Entity, or that any holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including the capital structure, management, ownership, or operation thereof or otherwise, the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interactions between or among any Debtor and any Released Party, the Debtors' in or out-of-court restructuring efforts, intercompany transactions, the Prepetition ABL Credit Agreement, the Prepetition Term Loan Credit Agreement, the New Term Loan Facility, the New ABL Facility, the DIP ABL Facility, and the DIP Term Loan Facility, the DIP Orders, the Equity Financing, the Restructuring Transactions, the Confirmation Order, the Restructuring Support Agreement, the Chapter 11 Cases, the Plan, including the Plan Supplement, the Disclosure Statement, all other Definitive Documents, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the negotiation, formulation, preparation, dissemination, filing, or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Prepetition Term Loan Credit Agreement, the Prepetition ABL Credit Agreement, the New Term Loan Facility, the New ABL Facility, the DIP Term Loan Facility, the DIP ABL Facility, the DIP Orders, the Equity Financing, the Disclosure Statement, the Filing of the Chapter 11 Cases, the Restructuring Transactions, or the Plan, the pursuit of confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation**

**Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan; (ii) the rights of any holder of Allowed Claims to receive distributions under this Plan; (iii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement; or (iv) any Claims against a Released Party arising from actual fraud, willful misconduct, or gross negligence, in each case, as determined by a Final Order.**

**Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, or the Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any Claims, Causes of Action, proceedings, or investigations against any non-Debtor Person or Entity in any forum.**

*E. Exculpation.*

**Except as otherwise specifically provided herein or in the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is released and exculpated from any Cause of Action for any Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, this Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the Filing of the Chapter 11 Cases, the negotiation of Definitive Documents, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of securities pursuant to this Plan, or the distribution of property under this Plan, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes to accept or reject this Plan and distribution of consideration pursuant to this Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan, or such distributions made pursuant to this Plan. In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under this Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.**

*F. Injunction.*

**Except as otherwise expressly provided herein or in the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests or Causes of Action that have been extinguished, released, discharged, settled, or are subject to exculpation, whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interests, along with their respective present or former employees, agents, officers, directors, principals, Affiliates, and Related Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, any post-Effective Date fiduciary of the estates, or the Released Parties: (a) commencing or continuing in any manner any**

**action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities, in each case, or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests or Causes of Action unless such holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation, or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests or Causes of Action released, discharged, subject to exculpation, or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.**

**The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property.**

*G. Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*H. Document Retention.*

On and after the Effective Date, until such times as the Chapter 11 Cases are closed in accordance with the Bankruptcy Code and the Bankruptcy Rules, the Reorganized Debtors shall maintain the books and records of the Debtors.

*I. Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

# ARTICLE X.
# CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

*A. Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to Article X.B hereof:

1. the Bankruptcy Court shall have entered the Confirmation Order and the Final DIP Order, each of which shall (i) be consistent with the Restructuring Support Agreement and otherwise be reasonably acceptable to the Debtors, the Required Consenting Term Loan Lenders, and the DIP ABL Agent and in consultation with the Committee; *provided* that the Confirmation Order shall be reasonably acceptable to the DIP ABL Agent, solely with respect to matters that adversely affect the treatment of the Prepetition ABL Claims or the DIP ABL Claims, and (ii) have become a Final Order;

2. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are reasonably necessary to implement and effectuate the Plan and all applicable regulatory or government-imposed waiting periods shall have expired or been terminated;

3. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Restructuring Support Agreement, the Restructuring Term Sheet, and the Plan;

4. the Definitive Documents, including any exhibits, schedules, documents, amendments, modifications, or supplements shall have been executed or otherwise effectuated and be in form and substance reasonably acceptable to the Debtors and the Required Consenting Term Loan Lenders, in consultation with the Committee, except as otherwise specified in the Restructuring Support Agreement or the Restructuring Term Sheet;

5. the Restructuring Support Agreement shall remain in full force and effect;

6. the Definitive Documents governing the New Term Loan Facility or New ABL Facility, as applicable, shall be in form and substance reasonably acceptable to the Debtors, the Required Consenting Term Loan Lenders and, with respect to the New ABL Facility to the extent such facility results in refinancing and cashless settlement of the DIP ABL Facility, the DIP ABL Agent and the DIP ABL Lenders, and shall have been duly executed and delivered by all of the Entities that are parties thereto, all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of such documents shall have been satisfied or duly waived in writing, and the financing thereunder shall have occurred or shall occur concurrently with the effectiveness of the Plan;

7. all Professional Fee Claims shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

8. all Restructuring Expenses shall have been paid in full;

9. the Debtors shall have established an agreed upon plan equity value pursuant to the confirmed Plan, subject to the consent rights set forth in the Restructuring Support Agreement;

10. the New Common Equity shall have been issued by the Reorganized Debtors (or shall be issued concurrently with effectiveness of the Plan);

11. the New Organizational Documents, subject to the consent rights set forth in the Restructuring Support Agreement, shall have been executed and/or effectuated (or shall be executed and/or effectuated concurrently with the effectiveness of this Plan);

12. no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued any order making illegal or otherwise restricting, limiting, preventing, or prohibiting the consummation of any of the Restructuring Transactions or any of the Definitive Documents;

13. as of the Effective Date, no temporary restraining order, preliminary or permanent injunction, judgment, or other order preventing the Restructuring Transactions or any of the transactions contemplated by any of the Definitive Documents, shall have been entered, issued, rendered, or made, nor shall any proceeding seeking any of the foregoing be commenced or pending; nor shall any proceeding seeking any of the foregoing be threatened by a governmental body; nor shall there be any law promulgated, enacted, entered, enforced, or deemed applicable to any of the parties which makes the consummation of the Restructuring Transactions or any of the transactions contemplated by any of the Definitive Documents illegal, void or rescinded; and

14. the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated in the Restructuring Term Sheet in a manner consistent with the Restructuring Support Agreement, the Restructuring Term Sheet and the Plan.

*B. Waiver of Conditions.*

The conditions to Confirmation and Consummation (or any component thereof) set forth in this Article X may be waived, in whole or in part, with the written consent (email shall suffice) of the Debtors and the Required Consenting Term Loan Lenders, in consultation with the Committee, and, with respect to any DIP ABL Claim or Prepetition ABL Claim, the DIP ABL Agent and the DIP ABL Lenders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

*C. Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims or Liens by the Debtors, any Holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A. Modification and Amendments.*

Except as otherwise specifically provided in this Plan and subject to the consent rights set forth in the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan, in consultation with

the Committee, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors, in consultation with the Consenting Term Loan Lenders and the Committee, expressly reserves its respective rights, in consultation with the Consenting Term Loan Lenders and the Committee, to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Notwithstanding anything to the contrary herein, the Debtors shall not amend or modify the Plan in a manner inconsistent with the Restructuring Support Agreement, or the consent rights (if any) set forth in the DIP Documents.

*B.* *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.* *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, in consultation with the Consenting Term Loan Lenders and the Committee, to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or secured or unsecured status, or amount of any Claim or Interest, including with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.J hereof;

13. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

15. enter an order concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article IX hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22. hear and determine all disputes involving the obligations or terms of the Equity Financing;

23. enforce all orders previously entered by the Bankruptcy Court; and

24. hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XII to the contrary, the New Term Loan Documents, the New ABL Documents, and the New Organizational Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

*A. Immediate Binding Effect.*

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such holders of Claims or Interests (1) are Impaired or Unimpaired, (2) have, or are deemed to have accepted the Plan, or (3) failed to vote to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

*B. Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the

Plan and the Restructuring Support Agreement. The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C. Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

*D. Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall be deemed to have been dissolved, and the members thereof, and their respective counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, except with respect to (i) reviewing and prosecuting final fee applications and Professional Fee Claims, (ii) participating in any appeals of the Confirmation Order, and (iii) participating in any pending adversary proceedings. From and after the Effective Date, the Reorganized Debtors shall continue to pay, when due and payable in the ordinary course of business, the reasonable and documented fees and out-of-pocket expenses of the Committee's Professionals solely to the extent arising out of or related to the foregoing without further order of the Bankruptcy Court.

*E. Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

*F. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*G. Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to

have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1. if to the Debtors, to:

   Leslie's, Inc.
   2005 E. Indian School Rd.
   Phoenix, AZ 85016
   Attention: Ben Lindquist
   E-mail address: blindquist@lesl.com

   with copies to:

   Simpson Thacher & Bartlett LLP
   167 North Green St.
   Ste. 1400
   Chicago, IL 60607
   Attention: John R. Luze; Michael J. Koch
   E-mail addresses: jack.luze@stblaw.com; michael.koch@stblaw.com

   -and-

   Simpson Thacher & Bartlett LLP
   425 Lexington Ave.
   New York, NY 10017
   Attention: Moshe A. Fink; Stephanie A. Marshak; Zachary J. Weiner
   E-mail addresses: moshe.fink@stblaw.com;
   stephanie.marshak@stblaw.com; zachary.weiner@stblaw.com

   -and-

   Haynes and Boone LLP
   1221 McKinney St., Ste. 4000
   Houston, TX 77010
   E-mail addresses: charles.beckham@haynesboone.com;
   kelli.norfleet@haynesboone.com; kourtney.lyda@haynesboone.com
   renecia.sherald@haynesboone.com; imaan.patel@haynesboone.com

2. if to a Consenting Term Loan Lender, to:

   Akin Gump Strauss Hauer & Feld LLP
   Robert S. Strauss Tower
   2001 K Street N.W.
   Washington, DC 20006
   Attention: Scott Alberino; Benjamin Taylor
   E-mail addresses: salberino@akingump.com; taylorb@akingump.com

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive

documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

*H. Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

*I. Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*J. Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/lesliespool/ or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

*K. Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; *provided* that any such deletion or modification must be consistent with the Restructuring Support Agreement; and (3) nonseverable and mutually dependent.

*L. Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members,

principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

*M. Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases except for one of the Chapter 11 Cases as determined by the Reorganized Debtors, and all contested matters (if any) relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case. The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

*N. Waiver or Estoppel.*

Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

[*Remainder of page intentionally left blank*]

Dated: November 12, 2026

LESLIE'S, INC.
on behalf of itself and all other Debtors

*/s/ Jeffrey White*
Jeffrey White
Authorized Representative
Leslie's, Inc.